[Cite as *State v. Billman*, 2013-Ohio-5774.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NOS. 12 MO 3 |
| | ) | 12 MO 5 |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| DAVID M. BILLMAN | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:            Criminal Appeal from the Court of
                                                          Common Pleas of Monroe County, Ohio
                                                          Case No. 2011-418

JUDGMENT:                                        Affirmed.

APPEARANCES:

For Plaintiff-Appellee:                         Atty. James L. Peters
                                                          Monroe County Prosecutor
                                                          101 North Main Street
                                                          Room 15
                                                          P.O. Box 430
                                                          Woodsfield, Ohio  43793-0430

For Defendant-Appellant:                    Atty. Timothy Young
                                                          Ohio Public Defender
                                                          Atty. Stephen A. Goldmeier
                                                          Assistant State Public Defender
                                                          The Midland Building
                                                          250 East Broad Street, 14th Floor
                                                          Columbus, Ohio  43215

JUDGES:
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                                                          Dated:  December 16, 2013

WAITE, J.

{¶1} Appellant, David M. Billman, was originally charged by the Monroe County Grand Jury in a twelve count indictment. This indictment contained two incidents of gross sexual imposition involving a minor, his adopted daughter, Child X, who was then under ten years of age; two incidents of rape, involving a second minor, Child Y, also his adopted daughter, who was then under ten years of age; two incidents of attempted rape involving Child Y and six incidents of gross sexual imposition, also involving Child Y. After he was convicted of these charges, Appellant filed two appeals, one involving his conviction and sentence and one from the decision denying his motion for a new trial. (Case Nos. 12 MO 3 and 12 MO 5). On appeal, the two cases were consolidated. In these consolidated appeals, Appellant challenges the sufficiency and weight of the evidence against him on all counts; he alleges that the indictment was defective with regard to the six counts of gross sexual imposition involving Child Y; that the trial court erred in rejecting his motion *in limine* seeking to exclude testimony; and that the trial court abused its discretion in denying his motion for new trial. Based on the record here, Appellant's five assignments of error are without merit and are overruled and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} Appellant and his wife, Mary Billman, are foster parents working with Monroe County Child and Family Services. According to testimony, the two live in Monroe County at 31143 Liberty Ridge Rd., Wingett Run, Ohio 45789 and have lived there since 1994. A total of seven children lived in the house under the care of the

couple at all periods relevant to this matter. In 2006 Appellant and his wife accepted responsibility for Child X and Child Y, who had been removed from the home of their biological father due to sexual abuse. According to Appellant's wife, when the two children entered Appellant's home, both had physical indications of sexual abuse. Both children lived in Appellant's home from February of 2005 until the present. Appellant resided in the family home until 2011, when his wife asked him to leave. Appellant moved out on October 28, 2011 after his wife confronted him with the accusations of Child X and Child Y, who told her that Appellant had been sexually abusing Child Y the entire time she lived with him, and that he had just started abusing Child X.

{¶3} On October 28, 2011, after he left the house, Appellant called a friend, David A. Preston, and announced: "I molested [Child Y]." (Pretrial Motion Hrg. Tr., p. 46; Tr. Vol. III, p. 93.) Preston was initially uncertain who was speaking because Appellant had not identified himself. When Appellant identified himself, Preston asked if he had a place to stay and offered to allow Appellant to stay the night in his house. Appellant and Preston had been friends for more than six years; they initially met through work near Cincinnati. Although they met because of their work, the two bonded through their Christian faith and regularly discussed religious issues. The two men were both assistant pastors, but attended different non-denominational churches. Neither man attended seminary or had undertaken any formal program of religious or pastoral study. Each man had been "ordained" by the pastor of his respective church. Neither church is formally affiliated with any organized Christian

denomination. Appellant stayed with Preston for a brief period, but eventually called the Monroe County Sheriff's Department and turned himself in.

{¶4} On November 17, 2011, Appellant was indicted on twelve counts alleging abuse of both Child X and Child Y. The counts included two instances of gross sexual imposition with regard to Child X, who was then eight years old. The remaining ten counts involved Child Y, who was then then nine years old, and included two instances of rape, two instances of attempted rape, and six instances of gross sexual imposition. The charges as they related to Child X were alleged to have occurred between January 1, 2011 and October 28, 2011. The charges as they related to Child Y were alleged to have occurred between January 1, 2006 and October 28, 2011. The trial court found both children competent to testify at trial and their testimony, coupled with that of the various adults to whom Appellant admitted his crimes, composed the bulk of the case against Appellant.

{¶5} Although Appellant was originally charged with two counts of gross sexual imposition involving Child X, her testimony at trial was confused, and ultimately she described a single incident. Child Y, however, described Appellant touching and rubbing her vagina on ten separate occasions in three different locations in the home: the living room, her mother's bedroom, and another sister's room. Child Y also described having been made to touch Appellant's genitals on six occasions and revealed multiple instances when Appellant licked her genitals. Child Y recounted three instances when Appellant placed his penis, which she described as a "[s]oft-ish/hard-ish thing," in her mouth. (Tr. Vol. III, p. 71.) During two of these

incidents, according to Child Y, a "clear-ish" liquid went into her mouth, which she then spit into the toilet. (Tr. Vol. III, p. 74.) According to Child Y, during one of the three occasions there was no liquid. In the entirety of Child Y's testimony she related nineteen separate encounters with Appellant that could support gross sexual imposition charges. At least three and possibly thirteen of those nineteen incidents involved conduct constituting rape (oral and digital). Child Y said Appellant told her not to tell anyone about the things he did "'cause I could go to prison for it." (Tr. Vol. III, p. 74.)

{¶6} Ten of the original twelve counts were submitted to the jury: two counts of gross sexual imposition involving Child X; two counts of rape involving Child Y; and six counts of gross sexual imposition involving Child Y. The jury returned guilty verdicts on nine of the ten counts. Appellant was acquitted of the second count of gross sexual imposition involving Child X.

{¶7} After sentencing, Appellant filed a motion for new trial based on an audio recording made by his wife of the two girls. Appellant argued that in the recording the girls suggested that they would recant their testimony. The state responded with affidavits describing conversations between Appellant and his wife that were recorded by the facility in which Appellant was being held. The recorded conversations between Appellant and his wife reflected that the two had planned the best way to record the girls to undermine their testimony. Appellant's wife told the girls that they would not have to testify in court at the sentencing hearing if they made a tape for her. The trial court concluded, without a hearing, that the recording offered

by Appellant was self-serving and not credible. The trial court overruled Appellant's motion for new trial. Appellant filed timely appeals of his conviction and sentence and of the ruling denying his motion for new trial and the two appeals were consolidated.

## Argument and Law

### Assignment of Error No. 1

Mr. Billman's convictions for rape and gross sexual imposition are not supported by sufficient evidence, and those convictions violated his right to due process under the Fifth and Fourteenth Amendments to the U.S. Constitution, Article I, Section 16 of the Ohio Constitution. (April 18, 2012 Judgment Entry of Sentence).

### Assignment of Error No. 2

Mr. Billman's convictions for rape and gross sexual imposition were against the manifest weight of the evidence, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution. (April 18, 2012 Judgment Entry of Sentence).

{¶8} Appellant's first and second assignments of error both address the quality and quantity of the evidence presented against him. For this reason they will be considered together. To discharge the state's burden when prosecuting a criminal offense, "probative evidence must be offered" on "every material element which is necessary to constitute the crime." *State v. Martin*, 164 Ohio St. 54, 57 (1955). Our

review of the jury's verdict is limited to whether there was evidence presented which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

**{¶9}** "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." *Id.* "It must be kept in mind by the appellate court that the jury heard all of the evidence and was instructed as to the law and as a result found the accused guilty beyond a reasonable doubt * * * the relevant inquiry does not involve how the appellate court might interpret the evidence" *Id.* When determining the sufficiency of the evidence presented, "the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* citing *Jackson v. Virginia*, 443 U.S. 307, 61 L.Ed.2d 560 (1979).

**{¶10}** However, when evaluating whether a criminal judgment is against the manifest weight of the evidence, the Court acts as a "thirteenth juror" to determine whether, "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). A verdict is not against the weight of the evidence when the record contains evidence which, if believed, will convince the average person of the accused's guilt beyond a reasonable doubt. *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978).

A verdict that is supported by sufficient evidence may still be against the manifest weight of the evidence. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*.' " (Emphasis sic.) (Internal citations omitted.)

*State v. Barnhart*, 7th Dist. No. 09 JE 15, 2010-Ohio-3282, ¶24, quoting *Thompkins*, supra, at 387. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶11} As a preliminary matter, Appellant raises on appeal the same argument he made in the trial court in support of his Crim.R. 29 motion. He contends that the state failed to sufficiently establish that his crimes took place in Monroe County. "Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant." *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). The standard of proof applicable to a review of a venue question is "beyond a reasonable doubt, although venue need not be proved in express terms so long as it is established by all the

facts and circumstances in the case." *Id.* "If the state fails to produce evidence of proper venue, then the evidence is insufficient to sustain a conviction of such offense or offenses." *State v. Hampton*, 134 Ohio St.3d 447, 452, 2012-Ohio-5698, 983 N.E.2d 324, ¶22.

{¶12} It was the status of Appellant and his wife as foster parents with Monroe County Children Services that brought them in contact with Child X and Child Y initially, and it was this status that delayed the agency's response when the abuse was reported. Testimony established that the two minor children, both under the age of ten at all points prior to trial, remained with Appellant and his wife continuously from their placement in the home at 31143 Liberty Ridge Rd., Wingett Run, Ohio, 45789, in February of 2005 until the time of trial. Testimony was offered that the home is located at the bottom of the county. (Tr. Vol. II, p. 36.) Appellant's son testified that he lives with his mother and siblings, including Child X and Child Y, in Monroe County. (Tr. Vol. II, p. 75.) The children testified that they attend Monroe County public schools when they are not at home or home schooled, and that all of the incidents of abuse occurred in rooms within the family home. Nothing in the record indicates that the family moved out of the county, or that the minor children left the county with Appellant, or on their own, at any point during the period covered by the indictment. Child X, Child Y, Appellant's wife and Appellant's son do not refer to any location other than the Liberty Ridge house as the girls' home. Appellant's wife called the Monroe County Sheriff's Department to report the crimes and Appellant later turned himself in to that same department. Appellant was indicted by the

Monroe County Grand Jury and the charging document identified Monroe County as the location of the crimes. The charges submitted to the jury included the location as an element of the crime. The trial court instructed the jury that one of the elements they must find beyond a reasonable doubt was that the crimes occurred in Monroe County.

{¶13} The jury heard Appellant's arguments on this issue as part of defense counsel's closing. When this record is evaluated as a whole there is sufficient evidence in the record which, if believed, would establish that the crimes took place in Monroe County beyond a reasonable doubt. Appellant's contention that we should conclude that Child X and Child Y were describing crimes that took place in another location, despite direct testimony by other witnesses placing the family home in Monroe County, and the testimony in the record that Appellant abused X and Y in the family home, is unreasonable. The facts and circumstances in this case support the jury's conclusion that the crimes occurred in Monroe County and venue is proper. *Headly, supra.* To the extent that Appellant contests venue, his arguments are without merit and are overruled.

{¶14} Appellant contends that the testimony given by Child X and Child Y was too confusing to be believed due to each child's alleged recollection of abuse that occurred prior to the time they entered Appellant's home. The children's testimony, however, clearly reflects that both were able to distinguish between a man with "spiky hair" who hurt them before they lived with Appellant and Appellant, whom they identified as "dad" and pointed out in the courtroom. (Tr. Vol. III, pp. 54-55, 59, 63,

72-73, 85-89.) The girls were able to distinguish both between the two men and the type of sexual abuse alleged to have been engaged in by each. The one count on which Child X's testimony waivered resulted in Appellant's acquittal on that count. The testimony of each child with regard to the remaining counts identified Appellant as the actor, the specific contact and conduct engaged in by Appellant to constitute each offense, and the family home as the location of each act. Appellant's conviction, however, did not rest solely on the testimony of the two children. Appellant's wife, son, friend, and the various law enforcement officers who interviewed him were all called to the stand to describe the multiple admissions Appellant made with regard to his conduct.

{¶15} Although Appellant's wife and son attempted to diminish the clarity and import of their original statements to the police, their testimony was telling. At trial, Appellant's wife described the afternoon of October 28, 2011 when Child Y approached her, told her she had something bad to tell her, and asked if they could go somewhere private. The pair entered another room where Child Y told her, "Daddy had done bad things to her." (Tr. Vol. II, p. 11.) Mrs. Billman continued: "And I said like what? And she said he touched me inappropriately and he put his penis in my mouth" and "sometimes squirts stuff from his penis into her mouth." (Tr. Vol. II, pp. 11, 59).

{¶16} Appellant's wife testified that she waited until Appellant returned home to confront him. He responded to Child Y's statement that she "told mom the truth" by saying, "I'm so sorry." Appellant told his wife that he had "just started on [Child

X]." (Tr. Vol. II, pp. 16, 30.) Appellant's son confirmed that, when confronted, Appellant admitted he molested the children. (Tr. Vol. II, pp. 81-82.) Additionally, Appellant's statements to his friend, Mr. Preston, and to certain law enforcement officers that the abuse he engaged in was only "oral," corroborated the testimony of both Child X and Child Y as well as the statements made by his wife. (Pretrial Motion Hrg. Tr., p. 48; Tr. Vol. III, pp. 95, 111.) The statements offered by the police officers who came in contact with Appellant when he made the decision to turn himself in are consistent with the statements given by the various adults to whom Appellant acknowledged or described his behavior. When Appellant contacted the police, he told them: "I had molested my daughter * * * I've been doing it for about four years." (Tr. Vol. II, pp. 98-99.)

{¶17} The testimony of Appellant's child victims, alone, was sufficient to establish the elements of the crimes that were included in each count submitted to the jury for a verdict. That testimony was corroborated by Appellant's statements. Although Appellant's wife and son did their best to cast doubt on their initial statements to police and the credibility of Child X and Child Y, ultimately the jury found them believable. Appellant's attempts to suggest that the two children invented stories of the abuse were not persuasive. The trier of fact had ample evidence that, if believed, supported each of Appellant's convictions. Nothing in this record suggests that the jury lost its way.

{¶18} The weight to be given the evidence and the credibility of the witnesses are primarily questions for the trier of fact to determine and there is nothing in this

record that would tend to discredit the evidence of record. Deference must be given the determination reached by the trier of fact. *DeHass, supra.* Accordingly, Appellant's first and second assignments of error regarding sufficiency and manifest weight are overruled.

<u>Assignment of Error No. 3</u>

Mr. Billman's indictment was duplicative and failed to allege with enough specificity what events made up the gross sexual imposition charges, and a bill of particulars and testimony at trial did not correct for this deficiency, in violation of his right to due process of law. Fifth and Fourteenth Amendments to the U.S. Constitution, Article I, Section 16 of the Ohio Constitution. (November 17, 2011 Indictment; March 16, 2012 Bill of Particulars).

**{¶19}** In Ohio, an individual may be "held to answer for a capital, or otherwise infamous, crime" only "on presentment or indictment of a grand jury." Ohio Constitution Section 1.10. The Fifth Amendment requirement that capital and serious crimes only be charged by the presentment or indictment of a grand jury is not applicable to the states and is not incorporated by the Fourteenth Amendment. *Alexander v. Louisiana*, 405 U.S. 625, 633, 92 S.Ct. 1221 (1972) (the Court "has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States.") For this reason, the assembly and operation of the grand jury, the law governing the indictment, and the procedures

pertaining to both are established by state, not federal, law. *State v. Fulton*, 57 Ohio St.3d 120, 122, 566 N.E. 2d 1195, fn. 1 (1991).

**{¶20}** "Fifth Amendment right to a grand jury does not apply to state prosecutions." *Id.*, citing *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111 (1884). Applying the grand jury provisions of the Fifth Amendment to the states would present considerable difficulty as just under half of the states have grand jury provisions. Among those states that do have such provisions, a number only use grand juries in civil matters, others limit them to capital crimes, and some make them entirely optional. A little over half of the states have no criminal indictment requirement and generally allow any criminal proceeding to begin with a prosecutor's information or similar document. Miller and Wright, *Criminal Procedures: Prosecution and Adjudication*, 207-213 (3rd Ed. Aspen Ed. Wolters Kluwer 2007.) Because Appellant does not have a Fifth Amendment right applicable to his Monroe County Grand Jury indictment, this analysis will focus solely on the Ohio law applicable to his arguments.

**{¶21}** An individual accused of a felony in Ohio is "entitled to an indictment setting forth the 'nature and cause of the accusation' pursuant to Section 10, Article I of the Ohio Constitution." *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985). The general assembly has defined an indictment as sufficient "if it can be understood therefrom":

(A) That it is entitled in a court having authority to receive it, though the name of the court is not stated;

(B)  If it is an indictment, that it was found by a grand jury of the county in which the court was held, * * *

(C)  That the defendant is named, * * *

(D)  That an offense was committed at some place within the jurisdiction of the court, * * *

(E)  That the offense was committed at some time prior to the time of finding of the indictment * * *

R.C. 2941.03.  Sections 2941.04, .05, and .06 allow multiple offenses to be charged in a single indictment, govern the form of the statement charging the offense and the form of the indictment; Crim.R. 7, which is otherwise substantively identical to R.C. 2941.03-.06, also requires that the indictment include the identifying number of the statutory violation charged.  Section 2941.08 lists ten types of defects that do not affect the validity of the indictment; these include "omitting to state the time at which the offense was committed, in a case in which time is not of the essence of the offense," and "stating the time imperfectly."  R.C. 2941.08(B) and (C).

{¶22}  In addition to parts (B) and (C), part (K) of the same section is a catch-all provision which states that the validity of the indictment is not altered by "other defects or imperfections which do not tend to prejudice the substantial rights of the defendant upon the merits."  R.C. 2941.08(K).  In Ohio, the statement of the offense committed in an indictment is sufficient "if it contains in substance, a statement that the accused has committed some public offense therein specified."  R.C. 2941.05.

The necessary statement may be "made in ordinary and concise language without any technical averments or any allegations not essential to be proved" and "may be in the words of the section of the Revised Code describing the offense" or "in any words sufficient to give the accused notice of the offense of which he is charged." *Id.*

{¶23} The purpose of the indictment in a criminal proceeding is "twofold." *Sellards* at 170. The indictment affords an accused "adequate notice and an opportunity to defend" by "compelling the government to aver all material facts constituting the essential elements of an offense" and enables him to "protect himself from any future prosecutions for the same offense." *Id.* Under Crim.R. 12(C)(2) any objection or defense based on defects in the indictment, apart from a failure to show jurisdiction in the court or to charge an offense, must be raised prior to trial:

> **Pretrial motions.** Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:
>
> * * *
>
> (2) Defenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceedings).

Crim.R. 12(C)(2). A failure to raise a defense or objection identifying a defect in the indictment prior to trial "shall constitute waiver of the defenses or objections." Crim.R. 12(H). A reviewing court need not consider an error that was not called to the attention of the trial court at a time when the error could have been avoided or corrected. *State v. Joseph*, 73 Ohio St.3d 450, 455, 653 N.E.2d 285 (1995).

**{¶24}** Since Appellant failed to timely raise this objection in the trial court, our review is limited to determining whether the information in the indictment is so deficient as to constitute plain error. *State v. Horner*, 126 Ohio St.3d 466, 473, 2010-Ohio-3830, paragraph three of the syllabus; *State v. Frazier*, 73 Ohio St.3d 323, 332, 652 N.E.2d 1000 (1995); *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215.

**{¶25}** Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). In *Barnes*, the Ohio Supreme Court articulated a three-part test for the finding of plain error:

First, there must be an error, *i.e.* a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. (Citations omitted.)

*Id.* Thus, notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶26}** The indictment filed in this matter complies with the requirements set forth in R.C. 2941.03:  it identifies the Monroe County Court of Common Pleas as the court receiving the indictment (Part (A)); indicates that the Grand Jury of Monroe County found each count in the indictment (Part (B)); named the accused (Part (C)); specifies that the offenses described in the indictment took place in Monroe County (Part (D)); and indicates that the offenses described were committed at some time prior to the filing of the indictment (Part (E)).

**{¶27}** Appellant's indictment includes twelve counts, set forth in plain language that mirrors the language of the revised code section describing each offense.  Each count includes the necessary specifications.  The indictment identifies the code section numbers relevant to each offense and satisfies R.C. 2941.05.  Each count includes a range of dates during which the offense identified in the count was alleged to have occurred.  The range identified in the twelve counts varies from an approximately ten month period in 2011, to a nearly six year range from January of 2006 until October of 2011.  No defect is apparent in the content or language of the indictment as the exact date of each offense is not an element of the offense charged.  Both victims were under ten years of age at the time of the indictment; there is no time-related defect in the date ranges provided in the indictment in

connection with the ages of Appellant's victims. The indictment filed in this instance has no facial defects under Ohio law.

**{¶28}** As the state notes, Appellant requested a bill of particulars and asked that the state identify the exact date, time, and place of each offense and the specific conduct that resulted in the charge. A bill of particulars need not provide specific dates and times where date and time is not an element of the offense charged. *State v. Clemons*, 7th Dist. No. 10 BE 7, 2011-Ohio-1177, ¶37; R.C. 2941.03(E). The limited purpose of a bill of particulars is "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense," but not "to provide the accused with specifications of evidence or to serve as a substitute for discovery." *Sellards* at 171. Thus, a bill of particulars need not list a specific date and time, because this information only describes when certain conduct may have occurred and does not describe the conduct itself, which is the proper subject of the bill. *Id.*

**{¶29}** In this instance, the state responded with a timely bill of particulars that further differentiated the offenses listed in the indictment by indicating, with regard to counts seven through twelve, that Appellant touched Child Y's vaginal and anal areas at least six times during the identified period. After receiving the bill of particulars Appellant did not object to the indictment or seek further clarification.

**{¶30}** Various Ohio reviewing courts, including this one, have noted that indictments dealing with sexual offenses against children "need not state with specificity the dates of alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged." *State v. Yaacov*, 8th Dist. No.

86674, 2006-Ohio-5321, ¶17; *State v. Gus*, 8th Dist. No. 85591, 2005-Ohio-6717. This is partly due to the fact that the specific date and time of the offense are not elements of the crimes charged. *Gus* at ¶6. Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. *State v. Mundy*, 99 Ohio App.3d 275, 296, 650 N.E.2d 502 (1994). "The problem is compounded" where, as here, "the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse." *State v. Robinette*, 5th Dist. No. CA-652, 1987 WL 7153, *3 (Feb. 27, 1987). Thus, "[a]n allowance for reasonableness and inexactitude must be made for such cases considering the circumstances." *Id.* An exception to this general rule certainly exists when the failure to allege a specific date "results in material detriment to the accused's ability to fairly defend himself, as where the accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the interval specified." (Internal citations omitted.) *Yaacov, supra*, at ¶18. Admittedly, the rights of the victims and the rights of the accused to establish an alibi or other defect are delicately balanced.

{¶31} In the present matter, Appellant has not identified any defect in the indictment that allegedly prevented him from preparing his defense. Appellant implies on appeal that the abuse he described to Preston as all "oral" was, in fact, a misunderstanding resulting from his habit of secretly giving Child X and Child Y bare-bottom spankings against the wishes of his wife. In the alternative, Appellant makes

an unsupported assertion that he was either on bed rest or bed-ridden at home during a portion of the time period covered in the indictment. Even if Appellant had offered actual evidence of secret spankings or additional time spent in bed at home, neither behavior explains or negates the charges. Child X and Child Y do not describe contact with Appellant that could be explained by a spanking, they describe sexual contact: Appellant rubbing and touching their private areas with his hands and tongue on multiple occasions and in multiple locations in the family home. Child Y further recounts multiple specific instances when Appellant placed his penis into her mouth until a liquid came out. (Tr. Vol. III, pp. 73-74.) When Appellant described his own behavior to Preston and others, he did not say he hit his daughters in an inappropriate fashion, he said he had "relations" with them or "molested" them in a manner that was, nevertheless, only "oral." (Tr. Vol. III, pp. 31; 111.) Appellant's tardy assertions are not exculpatory. Instead, they support the children's testimony that there were multiple occasions when he was alone with them and had the opportunity to engage in secret, illegal behavior, as well as explain that he spent additional time in the family home, presumably in the bedroom identified by Child Y as a location of abuse during the covered period, when he might otherwise have been expected to be at work.

{¶32} Appellant does not identify any defect in the indictment that prevented him from asserting his defenses of spanking or bed rest, or any other defense, for that matter. Nothing raised by Appellant in the trial court or implied by him on appeal satisfies the requirement that he identify a defect in the indictment that prejudiced his

ability to prepare a defense. He merely speculates that if he was provided with exact dates, maybe he could provide an alibi for those dates. The remainder of Appellant's argument is that the indictment is insufficient simply because it charges multiple instances of the same crime.

**{¶33}** The remainder of Appellant's argument is that the indictment is insufficient merely because it charges multiple incidents of the same crime. There is no inherent defect in an indictment that charges a defendant with repetition of the same crime over a defined period of time, however. Both R.C. 2941.04 ("[t]wo or more offenses in one indictment") and R.C. 2941.25 ("multiple counts") reflect the fact that individuals commit, and can be charged and tried for committing, multiple instances of the same crime. R.C. 2941.04 provides:

An indictment or information may charge two or more different offenses connected together in their commission, or different statements of the same offense, or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more indictments or informations are filed in such cases the court may order them to be consolidated.

The prosecution is not required to elect between the different offenses or counts set forth in the indictment or information, but the defendant may be convicted of any number of the offenses charged, and each offense upon which the defendant is convicted must be stated in the verdict. The court in the interest of justice and for good cause shown,

may order different offenses or counts set forth in the indictment or information tried separately or divided into two or more groups and each of said groups tried separately. A verdict of acquittal of one or more counts is not an acquittal of any other count.

R.C. 2941.25(B) provides:

Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Appellant raises no other alleged defect in the indictment and argues only that indictments including multiple instances of similar crimes are insufficient to satisfy the notice and double jeopardy protection purposes of grand jury indictments. In support, Appellant relies solely on *Valentine v. Kontech*, 395 F.3d 626 (6th Cir.2005).

**{¶34}** Appellant's reliance on *Valentine* is misplaced. As the state notes, although a federal circuit court decision may be persuasive, it is not binding on this Court. *State v. Burnett*, 93 Ohio St.3d 419, 423-424, 755 N.E.2d 857 (2001) ("Ohio appellate courts are not bound by lower federal court opinions," paraphrasing *State v. Glover*, 60 Ohio App.2d 283, 396 N.E.2d 1064 (1978). The factors weighing against the persuasive value of *Valentine*, however, are overwhelming: the *Valentine* decision does not rely on applicable law; the reasoning used by the court has been discredited under AEDPA ("Antiterrorism and Effective Death Penalty Act of 1996"

(28 USC 2254)); and the decision has been distinguished in every subsequent Sixth Circuit decision that cites it on this issue.

**{¶35}** Most importantly, the *Valentine* decision was based on Fifth Amendment law that does not apply to the Ohio Grand Jury indictment requirement. *Fulton and Hurtado, supra.* *Valentine* also misapplies existing federal law and misrepresents a number of the cases on which it relies. These cases actually address the double jeopardy concerns created by duplicative or duplicitous counts in an indictment and the discrepancy created by a directed verdict that does not identify which count it addresses, or by an acquittal that is similarly deficient. Hence, this case has no persuasive value, here.

**{¶36}** We have addressed this issue in a case with a similar fact pattern. In *State v. Stefka*, 7th Dist. No. 10 MO 7, 2012-Ohio-3004, 973 N.E.2d 786, we upheld the conviction where the indictment distinguished between the various counts, the bill of particulars provided additional distinguishing details, and the evidence presented at trial tended to prove that there were more instances of the crimes charged, not less. *Stefka*, at ¶49 (in *Stefka* we also noted, citing *State v. Clemons*, 7th Dist. No. 10 BE 7, 2011-Ohio-1177, that *Valentine* is not binding and is not good law). In the matter before us, while Child Y's testimony described nineteen separate incidents that could constitute gross sexual imposition, Appellant's indictment and conviction included only six of those incidents. Appellant, much like the defendant in *Stefka* was charged by a valid grand jury indictment and convicted on fewer than half of the incidents described in testimony. *Stefka*, at ¶49; *see also State v. Garrett*, 7th Dist.

08 BE 32, 2010-Ohio-1550, ¶27. Appellant, who has committed multiple crimes against the children placed in his care, is not protected from prosecution by the fact that he committed multiple instances of the same crime in the same manner.

**{¶37}** Appellant's indictment conformed to applicable Ohio law and met due process requirements by adequately informing Appellant of the charges against him. *State v. Lawrinson*, 49 Ohio St.3d 238, 551 N.E.2d 1261 (1998). Appellant was not prejudiced by the fact that the indictment included multiple counts of similar crimes over a period of months. Appellant sought and received a bill of particulars specifying the kinds of conduct with which he was charged. Appellant waived any alleged errors concerning the indictment by failing to object prior to trial and he has not satisfied his burden to identify plain error or demonstrate prejudice resulting from such an error. Based on this record, Appellant's third assignment of error is overruled.

### Assignment of Error No. 4

The court violated the clergy privilege codified in R.C. 2921.22(G) and R.C. 2317.02(C) in allowing David Preston, the defendant's spiritual advisor, to testify regarding otherwise confidential confessions and religious counseling matters. (March 21, 2012 Judgment Entry).

**{¶38}** Appellant filed a motion *in limine* seeking to prevent the use of any statements made by him to his friend, David Preston. The state opposed Appellant's motion citing *In re Soeder's Estate*, 7 Ohio App.2d 271, 220 N.E.2d 547 (8th Dist.1966). R.C. 2317.02(C)(1)-(2) states:

A cleric, when the cleric remains accountable to the authority of that cleric's church, denomination, or sect, concerning a confession made, or any information confidentially communicated, to the cleric for religious counseling purpose in the cleric's professional character. * * * "[T]he cleric may be compelled to testify on the same subject except when disclosure of the information is in violation of a sacred trust.

(2) As used in division (C) of this section:

(a) "Cleric" means a member of the clergy, rabbi, priest, Christian Science practitioner, or regularly ordained, accredited, or licensed minister of an established and legally cognizable church, denomination, or sect.

(b) "Sacred trust" means a confession or confidential communication made to a cleric in the cleric's ecclesiastical capacity in the course of discipline enjoined by the church to which the cleric belongs, including, but not limited to, the Catholic Church, if both of the following apply:

(i) The confession or confidential communication was made directly to the cleric.

(ii) The confession or confidential communication was made in the manner and context that places the cleric specifically and strictly under a level of confidentiality that is considered inviolate by canon law or church doctrine.

In his motion *in limine*, Appellant specifically sought to invoke the clergy privilege with regard to a "confession" as defined by statute. The trial court's ruling on Appellant's motion was made after a hearing and relied primarily on the statute and *In re Soeder*, *supra*. The trial court's reliance on *In re Soeder* was slightly misplaced, because the court in *Soeder* was interpreting an earlier version of the clerical privilege statute that did not include privilege arising from a counseling session.

**{¶39}** However, the trial court's reliance on *Soeder* does not negate the propriety of the trial court's ruling. Appellant argued that his communication to Preston was privileged because he was confessing, not because he was seeking or receiving counsel. Moreover, it is abundantly apparent from this record that Appellant was not entitled to rely on either the confessional or counseling privilege. Appellant and Preston did not have a pastoral relationship. Appellant did not attend Preston's church. Neither Preston's church nor the church Appellant actually attends recognize confession as a sacrament or religious obligation. Preston had no training as a pastor or Christian counselor. Preston's only acknowledged religious authority, the pastor who "ordained" him through "conversations", stated that Preston would be under a duty to report any information pertaining to a crime disclosed during a Christian counseling session.

**{¶40}** Appellant's brief mischaracterized the testimony given by Doug Lynn, Preston's pastor, who, unlike Preston, attended seminary, was ordained by a recognized religious organization, and is a licensed Christian counselor. Pastor Lynn explained during the motion hearing: "when the person is a threat to themselves or a

threat to others, or has done something that is so heinous [as Appellant's actions], then I'm under responsibility to report that." (Pretrial Motion Hrg. Tr., p. 70.) The pastor's testimony combined with Preston's statement that he did not believe that the confession Appellant made concerning his abuse of Child Y were in any way connected to his religious duties, but thought that Appellant was talking to him because the two had been friends for so long, conclusively refute the allegation of clerical privilege raised during the hearing. (Pretrial Motion Hrg. Tr., p. 49.) At trial, Preston's testimony was further developed by the defense on cross-examination:

Q. Has anybody ever come to you and tried to get right with God"

A. No.

Q. Nobody ever has?

A. No, it's our belief that you get right before God on your own.

I can help pray with you, I can help talk with you, those kinds of things, but you don't have to confess anything to me for your relationship with the Lord to be right.

* * *

The idea is, the teaching is more that the person prays to God for themselves. They pray.

They work out their own soul, salvation before God.

And if there's something that they want to talk to me about or work through with me, they can.

* * *

Q. Okay. Have you been given any rules about what is – have you had people come to you regarding counseling at all, about any of their issues?

A. No * * *

Q. So you've never had anybody come to you with a moral dilemma?

A. No.

Q. Okay. Have you ever been taught about what to do with a moral dilemma?

A. Yes. The stance, because our understanding of confessional is not that like the Catholic - * * *- so what we - what my understanding is, is that I would talk with the person with the understanding that if there's anything that comes to light that can cause harm to that person, that they are a harm to themselves, to someone else, especially if it's a child, that I have to speak.

(Tr. Vol. III, pp. 105-107.)

**{¶41}** This record clearly reveals that the communications between Appellant and Preston were not subject to the clerical privilege. Although Appellant did not

specifically argue that the communications were made for the purpose of religious counseling, the testimony during the hearing on that issue was equally clear. Preston did not perceive Appellant's revelation to be a religiously motivated confession and did not believe he was providing religious counsel to Appellant. Preston believed the statements were confidences from an old friend. Hence, Appellant's fourth assignment of error has no merit and is overruled.

Assignment of Error No. 5

Because the recantations of [Child Y] and [Child X] submitted with Mr. Billman's motion for new trial would have changed the outcome of the trial, the court abused its discretion in denying that motion without a hearing, violating Mr. Billman's right to due process of law. Fifth and Fourteenth Amendments to the U.S. Constitution, Article I, Section 16 of the Ohio Constitution. (May 3, 2012 Motion for New Trial; June 12, 2012 Judgment Entry).

**{¶42}** A motion for new trial pursuant to Crim.R. 33 must cite one of the specific grounds identified by the rule as its basis. Appellant filed under Crim.R. 33(A)(6), which provides:

When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the

witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such a length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

**{¶43}** A motion for new trial may be granted if the newly discovered evidence:

(1) discloses a strong probability that it will change the result if a new trial is granted; (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus. Crim.R. 33 does not require a hearing on the motion. The decision to grant or deny a new trial based on newly discovered evidence falls within the trial court's sound discretion. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶85. The decision should not be reversed absent a gross abuse of that discretion. *Petro* at 507-508. A complete recantation, even of an important witness, does not *per se* entitle a defendant to a new trial. *State v. Perdue*, 7th Dist. No. 04MA119, 2005-Ohio-2703, ¶16. Where a witness recants and/or offers a post-trial confession, the trial court must determine which of the contradicting statements of that witness are credible. *Id.* The court's

discretion in these matters extends to determining whether the later confession or recantation is credible. *State v. Wright*, 7th Dist. No. 11 HA 2, 2011-Ohio-5761, ¶19.

**{¶44}** Only after a trial court determines that the recantation is believable must the court consider whether it would materially affect the outcome of trial. *Perdue*, at ¶18, 27. Relevant considerations when weighing competing versions of testimony include: whether the judge reviewing the new trial motion also presided over the trial; whether the witness is a relative of the defendant or otherwise interested in his success; and whether the new testimony contradicts evidence proffered by the defense at trial. *State v. Shakoor*, 7th Dist. No. 10MA64, 2010-Ohio-6386, ¶27. According to the Ohio Supreme Court:

The trial judge is in a peculiarly advantageous position, under the prevailing circumstances, to pass upon the showing made for a new trial. He has the benefit of observing the witnesses at the time of the trial, is able to appraise the variable weight to be given to their subsequent affidavits, and can often discern and assay the incidents, the influences, and the motives that prompted the recantation. He is, therefore, best qualified to determine what credence or consideration should be given to the retraction, and his opinion is accordingly entitled to great weight. If the rule were otherwise, the right of new trial would depend on the vagaries and vacillations of witnesses rather than upon a soundly exercised discretion of the trial court.

*Taylor v. Ross*, 150 Ohio St. 448, 452 (1948).

**{¶45}** In the matter at bar, the trial court was faced not with the affidavits of recanting witnesses, but instead with the affidavit of Appellant's wife, who, at his urging, prompted Child X and Child Y, both under the age of ten, to discuss in an audio recording their opinion of the prosecutor's conduct during trial after they received a letter concerning the sentencing hearing. No affidavit or sworn statement recanting testimony was made by the actual witnesses. No recantation or other "new evidence" appears in this record.

**{¶46}** The state responded to Appellant's motion with an affidavit concerning recordings made of conversations between Appellant and his wife while he was incarcerated. The recordings indicate that Appellant had been urging his wife to tape the children for months, that previous attempts had been made, and that the two specifically discussed how they could get the children to "make the audio tape by telling them that it could be used in lieu of their appearance at sentencing." (5/31/12 Sgt. Eric K. Yonley Aff., ¶8.) As the state notes, mere recantation or a difference in testimony by a witness is not sufficient grounds for a new trial. The recantation must be credible, and the outcome of the trial likely to change. The material produced by Appellant is not a recantation of a witness. Even if it were, it would still be subject to the trial court's credibility determination.

**{¶47}** The trial court was best placed to evaluate the quality of the material presented, and well aware of the desire of Appellant's wife to alter the effect of her own testimony, which was made clear during trial. The wife's motivation to obtain contradictory statements from the children and the possible motivation of the children

who are under her care to provide the statements she desires would severely undermine even a direct recantation.

**{¶48}** The affidavit presented by the state amply demonstrates the calculation involved in obtaining a recording of the children, which, unlike the statements made by the children at trial, does not involve any admonition concerning the need to tell the truth or cross-examination. The state also indicates that multiple recordings of the children exist where they provided statements that correspond with their trial testimony, testimony that was sworn and tested through cross-examination, corroborated by Appellant's own statements, and supported by seven adult witnesses to whom Appellant made statements admitting abuse. The trial judge, who also ruled on the motion, was best placed to determine the credibility issues, here. *State v. Wright*, 7th Dist. No. 11 HA 2, 2011-Ohio-5761, ¶19. Nothing in this record suggests that the trial court erred in denying Appellant's motion for new trial. Appellant's fifth assignment of error also is without merit and is overruled.

<u>Conclusion</u>

**{¶49}** Appellant's convictions were based on sufficient evidence establishing each element of the offenses charged and were also supported by the weight of the evidence. Appellant's indictment satisfied the requirements of Ohio law and sufficiently apprised him of the charges against him. The trial court correctly denied Appellant's motion to suppress certain statements he made because the relevant testimony was not privileged. Appellant's motion for new trial did not present new evidence, but merely sought to contradict prior evidence. The trial court's decision to

deny that motion without a hearing was not error. All five of Appellant's assignments of error are without merit and are overruled and the judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.