OPINION
{¶ 1} Appellant, Anthony R. Greiner, timely appeals his convictions following jury trial in the Belmont County Court of Common Pleas. Appellant was convicted of trafficking in marijuana in the vicinity of a minor, a felony of the fourth degree, in violation of R.C. §2925.03(A)(2)(C)(3)(b). He was also convicted of corrupting another with drugs, a fourth degree felony, in violation of R.C. § 2925.02(A)(4)(a). He was sentenced to two, 15-month consecutive sentences.
 {¶ 2} Appellant argues on appeal that his jury convictions were against the manifest weight of the evidence and that the evidence was insufficient to support his convictions. For the following reasons, however, Appellant's arguments lack merit and are overruled.
 {¶ 3} Appellant's sole assignment of error on appeal asserts,
 {¶ 4} "THE VERDICT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} Although Appellant's assignment of error appears only to challenge the manifest weight of the evidence presented against him, a review of his argument reveals that he is also challenging the sufficiency of the evidence presented at trial.
 {¶ 6} A challenge to the sufficiency of evidence is different from a challenge to the manifest weight of the evidence. In reviewing a sufficiency of the evidence claim, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. *Page 2 
 {¶ 7} When trying to determine whether a jury verdict is against the manifest weight of the evidence we use a much broader test:
 {¶ 8} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 9} R.C. § 2925.03(A)(2) prohibits trafficking in marijuana. It states:
 {¶ 10} "(A) No person shall knowingly do any of the following:
 {¶ 11} "* * *
 {¶ 12} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 13} R.C. § 2925.03(C)(3)(b) makes this offense a felony of the fourth degree if the trafficking is done in the vicinity of a minor.
 {¶ 14} R.C. § 2925.02 corrupting another with drugs states:
 {¶ 15} "(A) No person shall knowingly do any of the following:
 {¶ 16} "* * *
 {¶ 17} "(4) By any means, do any of the following: *Page 3 
 {¶ 18} "(a) Furnish or administer a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard;"
 {¶ 19} The evidence presented at Appellant's trial reveals that on November 2, 2004, Appellant was the proprietor of the "G Spot," a bar/restaurant in the Village of Barnesville, Ohio. At some point that evening Seth Shumaker and a young boy were at Appellant's business and the three went for a ride in Appellant's van. The minor was 14 years old at the time, and he was initially at the bar that evening because his mother worked there.
 {¶ 20} According to Seth and the minor, Appellant drove the three to an unpaved road near the water treatment plant and reservoir in Warren Township to smoke marijuana. Once they arrived, Appellant parked his van and rolled a marijuana cigarette. Appellant lit it and passed it to Seth. Seth handed it to the minor, and he handed it back to Appellant. This happened about three times. Shortly thereafter the police arrived. (Tr., pp. 69, 89, 184-185.)
 {¶ 21} On cross-examination, Seth stated that he did not buy any drugs from Appellant that night; he did not see Appellant package the drug for sale in baggies that night; and he did not see Appellant sell drugs to anyone else that night. (Tr., pp. 179-180.)
 {¶ 22} Village of Barnesville Patrolman Richard Justice was on duty that night and had just picked up Patrolman Guerin at his home. It was raining that evening and just becoming dark. The two were driving back to the police station but, on their *Page 4 
way, they drove past the water treatment plant and reservoir. They explained that they had a standing order to drive by for safety reasons and that it was a known drug area. The officers noticed a parked van at the site. The driver's side window was down about a quarter of the way and smoke was pouring out. (Tr., pp. 70-72, 80, 90, 92, 100, 104.)
 {¶ 23} Guerin saw the van's occupants turn quickly and begin fumbling around inside. This caused Guerin some concern since the occupants could have been searching for a weapon. After exiting the cruiser and approaching the van, Guerin immediately smelled marijuana. Guerin also saw several half-burnt marijuana cigarettes on the console. (Tr., pp. 105-107.)
 {¶ 24} After he secured Appellant, Guerin saw Seth and the minor in the back of the van. Guerin searched the vehicle and found three large bags of marijuana in a blue tin located in the middle console. Each tested positive for marijuana. (Tr., pp. 111-112, 115.)
 {¶ 25} Guerin explained that based on his training, marijuana found in such large, individually wrapped amounts indicates that the substance was to be used for distribution. He explained that marijuana is usually separated in this manner based on the different grades of marijuana for sale. Guerin also found an open box of plastic sandwich bags nearby, which he felt was significant because these are commonly used to break up the drugs for sale or transport. (Tr., pp. 119-122.)
 {¶ 26} Upon searching the defendant, Guerin found four large amounts of money in different pockets of Appellant's bib overalls. Each was secured with a *Page 5 
rubber band. Appellant told the officers that he was going to use this money to buy alcohol for his bar. It was later determined that Appellant had more than $1,600 on his person that evening. (Tr., pp. 80, 93, 94, 124-125.)
 {¶ 27} During the inventory search of the van, officers found a fourth bag of marijuana inside a shoe behind the driver's seat. While Appellant admitted that the marijuana in the van was his for personal use, he denied knowledge of this fourth bag. It was later determined that the van contained 186 grams of marijuana. This was the largest amount of marijuana Guerin had personally uncovered at one time during his five years as an officer. (Tr., pp. 95, 128, 134, 144-145.)
 {¶ 28} Guerin believed that Appellant was selling marijuana based on the large amount of money he had in separate pockets, the large amount of marijuana in four separate bags, and the box of smaller sandwich bags. (Tr., pp. 163-164.) Although Guerin did not suspect that Appellant had sold the drug to the minor or Seth that evening, Guerin indicated that he arrested Appellant for knowingly preparing the marijuana for transport based on the fact that there were separate bags prepared for sale in close proximity to the smaller sandwich baggies. Further, all of these materials were transported in his van. (Tr., pp. 152-156.)
 {¶ 29} Appellant testified on his own behalf. He explained that in addition to operating the bar/restaurant, he was also running a garbage business at the time. He stated that he operated both businesses mainly on a cash basis and that he kept the money for the two businesses in separate pockets. He said he had a large amount of cash in order to pay his garbage employee and to pay for gasoline for the *Page 6 
week. Appellant introduced two canceled checks reflecting that he withdrew a total of $800 from his checking account in the few days prior to his arrest. However, Appellant also stated that he had spent some of that money and had only about $450 remaining when he was arrested. (Tr., pp. 199-200, 202.)
 {¶ 30} Appellant also introduced copies of the cash register tape from his bar from the four days prior to November 2, 2004. Appellant said that the tapes reflected about $1,600 to $1,700 in sales from the two cash registers, but that he had paid the owner of the bar with some of that money. Appellant also stated that he did not have a bank account for the bar and that he paid cash for the alcohol. Appellant was due to receive his shipment for the alcohol the day after his arrest. (Tr., pp. 203-204.) Appellant did not submit any independent evidence to support his statements that he regularly purchased the bar's beer, alcohol, and food with cash.
 {¶ 31} Appellant also testified that the marijuana in his possession on the date in question was for his personal use. He denied that he owned the fourth bag that was found inside a shoe. (Tr., pp. 207-208.)
 {¶ 32} Appellant also denied smoking marijuana with the minor boy and Seth that day. Instead, Appellant claimed that he drove Seth to the reservoir to talk about Seth's relationship with Appellant's daughter. Appellant also claimed that the two boys had been in trouble before and that they were lying about smoking Appellant's marijuana. (Tr., pp. 214-215, 216-217.)
 {¶ 33} Based on the record, we cannot find that Appellant's conviction for corrupting others with drugs in violation of R.C. § 2925.02 lacked sufficient evidence. *Page 7 
Both the boy and Seth testified that Appellant provided them with the marijuana cigarette that they were smoking that day. Further, the minor testified that he was fourteen years old at the time.
 {¶ 34} Additionally, Appellant's conviction for this offense was not against the manifest weight of the evidence. There was nothing in the record which tends to impeach the testimony of either the minor or Seth. Appellant presented no motive as to why they would lie. Further, the fact that Appellant claimed that they were not smoking marijuana lacks credibility since the arresting officers said they saw and smelled marijuana smoke, and this testimony corroborates the story of Seth and the boy. As such, Appellant's conviction for corrupting another with drugs must stand.
 {¶ 35} Appellant's trafficking in marijuana conviction, a violation of R.C. § 2925.03(A)(2), was also based on sufficient evidence. Although no one saw Appellant selling, packaging, or distributing marijuana on the day in question, the officers testified that, based on their experience and training, they believed Appellant was transporting marijuana intended for sale in violation of R.C. § 2925.03(A)(2). The large amount of marijuana divided into separate bags in close proximity to the smaller sandwich size bags was very indicative that the marijuana was being prepared for sale. The fact that Appellant had four large sums of money in different pockets also supports the conclusion that he was transporting the marijuana with the intent to sell. Thus, evidence was submitted to support the elements of the crime.
 {¶ 36} The fact that Appellant provided the jury with an alternative version of the facts and attempted to support his construction of the evidence with other facts *Page 8 
does not automatically lead to the conclusion that his conviction was against the manifest weight of the evidence. Appellant certainly had an interest in testifying in his own favor; the jury simply did not believe him. Further, Appellant probably damaged his credibility when he denied smoking marijuana that evening despite the fact that every witness testified to the contrary. The record supports the conclusion that the jury did not lose its way and create a manifest miscarriage of justice when it found Appellant guilty of trafficking.
 {¶ 37} It should be noted that Appellant's brief focuses on the fact that there was no testimony showing that Appellant was selling marijuana on the night in question. Appellant, however, fails to fully appreciate the fact that under R.C. § 2925.03(A)(2), trafficking includes transporting or preparing marijuana intended for distribution. Thus, evidence that Appellant actually sold marijuana was not necessary.
 {¶ 38} Based on the foregoing, Appellant's sole assignment of error lacks merit in its entirety and is overruled. Appellant's convictions are affirmed in full
Vukovich, J., concurs.
 DeGenaro, P.J., concurs. *Page 1