[Cite as *State v. Parker*, 2015-Ohio-4101.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 13 MA 161 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| WILLIE PARKER | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of
Common Pleas of Mahoning County,
Ohio
Case No. 2012 CR 723

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant: Atty. Rhys B. Cartwright-Jones
42 N. Phelps St.
Youngstown, Ohio 44503-1130

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: September 30, 2015

[Cite as *State v. Parker*, 2015-Ohio-4101.]
WAITE, J.

{¶1} Appellant Willie Parker appeals a Mahoning County Common Pleas Court conviction following jury trial on two counts of rape and twenty counts of gross sexual imposition ("GSI"). The indictment charged Appellant with twenty counts of rape and twenty counts of GSI for alleged acts that occurred over the course of two years. Appellant argues that the indictment failed to present sufficient details as to which facts correlated with which charge. Additionally, Appellant contends that the lengthy timespan of the alleged acts was not properly narrowed. Appellant was provided with a bill of particulars which supplemented the indictment and provided sufficient details of the allegations. As we held in *State v. Billman,* 7th Dist. Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774, an otherwise sufficient indictment is not made insufficient when exact dates of incidents alleged to occur over an extended period of time are not provided, so long as specific dates and times do not constitute elements of the offense.

{¶2} Appellant also argues that the indictment charged him with an "absurd" number of counts. However, *Billman, supra,* also holds that no inherent defect exists when a defendant is charged with numerous counts of the same offense over a defined period of time. Finally, Appellant challenges his conviction both as against the sufficiency of the evidence and its manifest weight. Although the parties' witnesses presented somewhat conflicting stories, even the defense witnesses appeared to corroborate the victim's accusations. As the record is devoid of any evidence that the jury clearly lost its way in a manner creating a manifest injustice,

we will not disturb its verdict. Accordingly, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

**{¶3}** The victim in this matter is Appellant's goddaughter as well as his daughter's former best friend. While the victim was in seventh and eighth grade, Appellant would pick up his daughter, the victim and another girl from school and drive them to his house. In the late evening, he would drive the victim and her friend home, first dropping the friend off so that he and the victim remained alone in the car.

**{¶4}** While driving the victim home, he would pull his car off to the side of the road and perform various sexual acts on her. Specifically, she accused him of kissing her, touching her breasts, and inserting his finger into her vagina. The victim alleged that these acts occurred on more than twenty occasions from September 1, 1999 until September 28, 2001. The victim stated that the abuse ended when she and Appellant's daughter had a falling out and she no longer visited Appellant's home.

**{¶5}** The victim never spoke of the incident until she was 21 years old. At that time, she began suffering from non-epileptic seizures and was treated at the Cleveland Clinic. During one visit to the clinic, the victim began crying and told her mother that Appellant had hurt her, but she then had a seizure and stopped talking. She never provided her mother with details, but began to see a therapist. While at the therapist's office, the victim noticed a flyer advertising a group for sexual assault

victims. When she inquired about the group, the therapist asked her if she had been sexually abused, and the victim answered in the affirmative.

{¶6} The therapist referred the victim to the group. Shortly thereafter, the victim learned that the statute of limitations had not run. She filed a police report accusing Appellant of sexual abuse. After interviewing the victim and Appellant, the state charged Appellant with twenty counts of rape, a felony of the first degree, and twenty counts of GSI, a felony of the fourth degree. Following jury trial, Appellant was convicted on two counts of rape and twenty counts of GSI. He was sentenced to ten years per rape count, to be served concurrently, and eighteen months per gross sexual imposition charge, also to be served concurrently. The sentences for rape and GSI were ordered to run consecutively, for an aggregate total of eleven and a half years of incarceration. Appellant filed a timely appeal.

First Assignment of Error

The trial Court erred in allowing the case to proceed based on an indictment that assured convictions in violation of the double jeopardy clauses of the U.S. and Ohio Constitutions.

{¶7} As only about half of the states have grand jury proceedings, the "Fifth Amendment right to a grand jury does not apply to state prosecutions." *Billman, supra,* at ¶20, citing *State v. Fulton,* 57 Ohio St.2d 120, 122, 566 N.E.2d 1195 (1981); Miller and Wright, *Criminal Procedures: Prosecution and Adjudication,* 207-213 (3rd Ed. Aspen Ed. Wolters Kluwer 2007.) Thus, our discussion will be limited to applicable Ohio law.

**{¶8}** In Ohio, a person accused of a felony is "entitled to an indictment setting forth the 'nature and cause of the accusation' pursuant to Section 10, Article I of the Ohio Constitution." *State v. Sellards,* 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985).

**{¶9}** An indictment [or information] is sufficient "if it can be understood therefrom":

(A)  That it is entitled in a court having authority to receive it, though the name of the court is not stated;

(B)  If it is an indictment, that it was found by a grand jury of the county in which the court was held; * * *

(C)  That the defendant is named, * * *

(D)  That an offense was committed at some place within the jurisdiction of the court, * * *

(E)  That the offense was committed at some time prior to the time of finding of the indictment * * *.

*State v. Billman,* 7th Dist. Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774, ¶21.

**{¶10}** Several Ohio statutes also address indictments.  Crim.R. 7 requires an indictment to contain the identifying number of the charged statutory violation.  R.C. 2941.08 lists ten types of defects that will not affect an indictment's validity.  These include: "omitting to state the time at which the offense was committed, in a case in

which time is not of the essence of the offense," "stating the time imperfectly," and "other defects or imperfections which do not tend to prejudice the substantial rights of the defendant upon the merits. R.C. 2941.08(B), (C) and (K). Pursuant to R.C. 2941.03 - .06, a single indictment may be used to charge multiple offenses.

**{¶11}** Failure to timely object to the sufficiency of the information in the indictment limits appellate review to a plain error analysis. *State v. Horner*, 126 Ohio St.3d 466, 473, 2010-Ohio-3830, paragraph three of the syllabus; *State v. Frazier*, 73 Ohio St.3d 323, 332, 652 N.E.2d 1000 (1995); *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215. It is well established that, "notice of plain error 'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Billman* at ¶25.

**{¶12}** A three-part test is employed to determine whether plain error exists. *Id.* at ¶25, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

> First, there must be an error, *i.e.* a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

*Billman* at ¶25.

**{¶13}** Appellant claims that his indictment was so vague it invited convictions that would violate the double jeopardy clause. Appellant asserts that the indictment

failed to specify the acts associated with each count. He also argues that the acts were vaguely stated to have occurred during a lengthy period, September 1, 1999 to September 28, 2001, which is insufficient to place him on notice of the charges against him. Appellant argues that the "absurd number of counts" charged against him was the result of prosecutorial misconduct. He asserts that the state lacked sufficient evidence to support twenty convictions. Essentially, Appellant argues that the state led the jury to decide the case under a theory of "where there is smoke there must be fire."

{¶14} In response, the state compares and contrasts the facts of this case to several other Ohio cases. The state highlights the similarities between the instant case and *Billman, supra*, and asserts that in *Billman,* we stated that an indictment is not defective merely because it charges a defendant with multiple charges of the same offense. The state distinguished the present case from the Sixth Circuit's decision in *Valentine v. Konteh,* 395 F.3d 626 (6th Cir.2005), with which we specifically disagreed in *Billman.* Accordingly, the state urges that Appellant's indictment conformed to Ohio law and adequately placed him on notice of the charges he faced. Regardless, Appellant has not met his burden of showing that some prejudice was suffered as a result of his allegedly vague indictment. The state also asserts that the record does not support Appellant's allegation of prosecutorial misconduct.

{¶15} When evaluating the sufficiency of an indictment, it is necessary to determine whether it meets the requirements of R.C. 2941.03. This indictment

specified the name of the trial court, the Mahoning County Common Pleas Court. Thus, R.C. 2941.03(A) is met. Second, the indictment revealed that the Grand Jury was comprised of residents of Mahoning County, the county where the court was held, in accordance with R.C. 2941.03(B). Third, as required under R.C. 2941.03(C), Appellant's name is listed as the defendant. Fourth, the indictment stated that the incidents occurred within Mahoning County, pursuant to R.C. 2941.03(D). Fifth, in accordance with R.C. 2941.03(E), the date of each offense (between September 1, 1999 and September 29, 2001) precedes the date of the indictment (July 12, 2012). As all of the requirements of R.C. 2941.03 are met, the indictment is not facially defective.

**{¶16}** As to Appellant's specific arguments, we have addressed almost identical issues in two previous cases. In *Billman,* the appellant was charged with two counts of GSI and two counts of rape against one minor child, and two counts of attempted rape and six counts of GSI against a second minor child. The indictment alleged that the incidents involving the first victim occurred between January 1, 2011 and October 28, 2011. The incidents involving the second victim allegedly occurred between January 1, 2006 and October 28, 2011. After trial, the appellant was convicted on two counts of rape and ten counts of GSI. He was acquitted on one count of GSI and the remaining attempted rape charges were not submitted to the jury. The appellant appealed and presented arguments similar to those made by Appellant in the instant case. He argued that the range of times in which the

incidents occurred was vague, the indictment was duplicative, and that the indictment contained insufficient facts to specify which events comprised the charges.

**{¶17}** On review, we affirmed Billman's conviction. Just as in the instant case, the appellant was limited to a plain error review. After finding that the indictment was facially sufficient, we addressed the appellant's arguments. We held that an indictment and bill of particulars "need not provide specific dates and time where date and time is not an element of the offense charged." *Id.* at ¶28. In so doing, we noted that child victims often have difficulty providing exact dates, particularly when the incidents occurred repeatedly over a lengthy period of time.

**{¶18}** While both of Billman's victims testified that the conduct occurred numerous times and provided the details of each event and what specific conduct occurred, we emphasized that there is no inherent defect in an indictment that charges a defendant with multiple counts of the same offense if the conduct was repeated over a defined period of time. Further, we noted that the state provided a bill of particulars that specified which acts were performed on the victims. Lastly, we addressed the Sixth Circuit's ruling in *Valentine, supra.* As noted by the state, we observed that *Valentine* does not rely on Ohio law and "the decision has been distinguished in every subsequent Sixth Circuit decision that cites it on this issue." *Billman, supra,* at ¶34.

**{¶19}** We also addressed the sufficiency of an indictment in *State v. Stefka,* 7th Dist. No. 10 MO 7, 2012-Ohio-3004, 973 N.E.2d 786. In that case, the appellant was charged with thirty-nine counts involving sexual acts committed against three

minor victims. He was charged with twenty-six counts of rape (four with a specification) and thirteen counts of GSI. He requested and received a bill of particulars which described the type of conduct that supported each charge. On appeal, he presented arguments similar to those presented by Appellant in the instant case.

**{¶20}** In *Stefka,* we reiterated that specific times and dates need not be provided when they are not an element of the charged offense. Further, we stated that "cases involving sexual abuse of children often cannot be charged with a high level of specificity with regard to the time of the abuse." *Id.* at ¶50. In *Stefka,* the indictment and bill of particulars differentiated the counts by detailing the type of conduct, how it started, and how long it lasted. We specifically acknowledged that the state chose to only bring twenty-six charges against the appellant, when the evidence supported several more counts because the appellant committed different acts against all three victims each weekend for three months.

**{¶21}** Turning to the instant matter, we first address Appellant's concerns regarding the timeline provided within the indictment. As stated above, it is well-established in Ohio that an exact time or date is not required when these are not an element of the charged offense. Clearly, time and date are not elements of either charged offense, rape and GSI. As previously noted, there is usually great difficulty in obtaining exact dates when the victim was a minor at the time of the abuse. We acknowledge the difficulty in determining an exact time or date of any individual incident when the abuse occurred over a long period of time. Even though the victim

is now an adult, she was a minor at the time of the abuse and the record reflects that the abuse occurred every school day during the victim's seventh and eighth grade years, from September 1, 1999 until September 28, 2001. Thus, in accordance with our decisions in *Billman* and *Stefka,* the range of dates, here, does not create a defect in the indictment.

**{¶22}** Next, we consider the alleged vagueness of the acts associated with each count. The indictment contained a total of forty counts. Each count included a range of dates the incidents occurred and addressed each element of the corresponding offenses. Absent from the indictment is information about the specific conduct involved in the incidents. However, the state filed a bill of particulars which provided this information. As to counts one through twenty (the rape counts), the state specified:

> On or about or between September 1, 1999 and September 28, 2001, at multiple locations in and around Youngstown, Mahoning County, Ohio, [Appellant] did engage in sexual conduct with [the victim], and purposely compelled her to submit by force or threat of force, by inserting his fingers into her vagina on multiple occasions, and she was only in the 7th and 8th grades, he was her godfather and would pick her up from school.

(7/18/13 Bill of Particulars.)

**{¶23}** As to counts twenty-one through forty, the bill of particulars stated:

On or about or between September 1, 1999 and September 28, 2001, at multiple locations in and around Youngstown, Mahoning County, Ohio, [Appellant] did have sexual contact with [the victim], not his spouse and purposely compelled her to submit by force or threat of force, by inserting putting [sic] his mouth on her breasts on multiple occasions, and she was only in the 7th and 8th grades, he was her godfather and would pick her up from school.

(7/18/13 Bill of Particulars.)

{¶24} As the indictment and the bill of particulars comply with the law outlined in *Billman* and *Stefka,* this indictment sufficiently described which acts led to which counts. The fact that Appellant committed the same conduct repeatedly over a long period of time does not burden the state with the duty to spell out every detail of every incident.

{¶25} Appellant's final two arguments will be addressed together. He claims that the indictment vaguely states that the conduct occurred twenty times. He also argues that the forty counts led the jury to decide the case under a theory that "where there is smoke there must be fire." We first note, as we did in *Stefka,* that the testimony in this case indicates that the state could have charged Appellant with more than forty counts. If the victim's testimony is believed, the abuse occurred every school day for two years. Theoretically, conduct committed every school day for two years could support over a hundred counts. Thus, this record does not support Appellant's claim that he was overcharged.

{¶26} Accordingly, the record demonstrates that the indictment and the bill of particulars provided Appellant with sufficient detail to place him on notice of the charges against him. We cannot find plain error in regard to the indictment. As such, Appellant's first assignment of error is without merit and is overruled.

## Second Assignment of Error

The trial Court erred in entering convictions against the defendant absent sufficient evidence and/or in contribution of the manifest weight of the evidence.

{¶27} Appellant has challenged his conviction as to both the sufficiency of the evidence and its manifest weight. A sufficiency of the evidence review questions whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith,* 7th Dist. Nos. 02 CA 227, 02 CA 231, 2004-Ohio-4285, ¶10, citing *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997); *State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). Thus, sufficiency is a test of adequacy. *Thompkins* at 386. Whether the evidence is legally sufficient to sustain a conviction is a question of law. *State v. Sloane,* 7th Dist. No. 06 MA 144, 2009-Ohio-1175, ¶54, citing *State v. Robinson,* 162 Ohio St. 486, 124 N.E.2d 148 (1955).

{¶28} Even if a conviction is supported by sufficient evidence, a reviewing court may find the conviction is against the manifest weight of the evidence. *Thompkins* at 387. When a reviewing court determines whether a conviction is

against the manifest weight of the evidence, a broader test is used. *State v. Greiner,* 7th Dist. No. 05 BE 27, 2007-Ohio-1390, ¶7. Under the manifest weight test, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at ¶8, citing *Thompkins, supra,* at 387; *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶29}** Appellant was convicted on two counts of rape in violation of R.C. 2907.02(A)(2) which states that: "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Appellant was additionally convicted on twenty counts of GSI in violation of R.C. 2907.05(A)(1) which provides that:

No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

**{¶30}** Appellant urges that the victim's statements were too vague to support his convictions. Appellant particularly takes issue with the victim's unsupported allegation that the incidents occurred more than twenty times. Further, Appellant

asserts that both of the state's witnesses testified that the victim had never discussed twenty incidents of rape or gross sexual imposition with anyone prior to filing charges. In fact, Appellant notes that the testimony shows the victim had denied such conduct even occurred to two separate people.

**{¶31}** The state argues that the victim gave very specific testimony regarding: the place where the incidents occurred (in Appellant's car), the events leading up to the incidents (while driving her home from school he would pull the car over and perform the acts), the conduct (he would fondle her breasts, kiss her, and insert his fingers into her vagina), the length of time (five to fifteen minutes), and the frequency of the incidents (every time he drove her home). Further, the state highlights the testimony of Jamal and Michale Hoey who both testified that, while she refused to discuss the extent of the abuse, the victim had told them abuse had occurred. As the jury was in the best position to judge the witnesses' credibility, the state contends that the manifest weight of the evidence supports Appellant's convictions.

**{¶32}** The first witness presented by the state was the victim's mother. She testified that the victim began to experience seizures around her twenty-first birthday and was taken to the Cleveland Clinic on at least one occasion. At some point during a visit to the clinic, the victim began crying hysterically and stated, "Willie hurt me," but then went into a seizure before she could provide specific details. (Tr., p. 369.) The mother explained that the victim later entered counseling and eventually reported the incident to the police.

{¶33} The victim testified next. She explained how the abuse began, what conduct it entailed, and how it ended. She began by explaining that Appellant would pick his daughter, herself, and another girl up at school and drive them to his house. Appellant would take her and the other friend home late in the evening, dropping the other girl off first so that only the two of them remained in the car. While driving her home, Appellant would pull over on the side of the road towards the end of a street where there were no houses. She testified that once the car was stopped, he would touch her breasts underneath her bra with both hands, kiss her, and insert his fingers into her vagina. She stated that this occurred every time he took her home, which was five days a week, and would last for five to fifteen minutes. She testified that he repeated the conduct on at least twenty occasions.

{¶34} She also testified to a specific incident when a police car pulled behind them and Appellant stopped what he was doing and acted as though he was checking his car. When he pulled away the police car did not follow. She testified that the incidents stopped all together after she and his daughter had a falling out and she no longer went to the house. She explained that she never told anyone about the abuse because she was afraid.

{¶35} The victim testified that she first spoke of the incident shortly after she began experiencing non-epileptic seizures when she was twenty-one years old. She stated that while receiving treatment for the seizures at the Cleveland Clinic she finally told her mother about the incidents but did not provide details. Shortly thereafter, she entered a treatment group for victims of sexual offenses and filed a

police report a few months later. Around the time she filed the report, she testified that she told Michale and Jamal Hoey about the abuse for the first time, but she did not give them specific details. Sometime after confiding in the Hoeys, she argued with them and no longer considered them friends.

**{¶36}** Amanda Canteras, the victim's therapist, testified that the victim inquired about a poster on the wall which advertised a group for sexual assault victims. Canteras asked the victim if she had been sexually abused and the victim responded in the affirmative. The victim confided that she was abused from ages thirteen to fourteen. She further testified that the victim alleged that the man abused her while giving her a ride home.

**{¶37}** Detective David Lomax testified that the victim told him she had been sexually abused inside a car. She provided street names where the abuse took place. When asked if the victim described specific acts, Det. Lomax stated that the victim specified that he kissed her, fondled her, and touched her vagina with his fingers. He stated that the victim told him that the abuse occurred more than twenty times. He testified that Appellant was brought in for an interview and told Det. Lomax "I don't remember it happening that way." (Tr., p. 565.) However, Appellant did not offer a further explanation.

**{¶38}** Jamal Hoey testified next. He stated that the victim told him and his sister, Michale, that she had been molested by a family friend when she was younger. The victim told him that she was touched in an inappropriate way and felt "nasty" about it. (Tr., p. 684.) He explained that when describing the abuse, she

motioned a "swipe" across her chest. (Tr., p. 684.) He asked her if the man penetrated her and she said no. He clarified that he only asked if the man had sex with her, not whether he penetrated her with his fingers. He admitted that he did not remember her response when he asked if the man had fondled her.

**{¶39}** Michale Hoey testified that the victim told her that she was sexually abused when she was younger and she never told anyone about it before. The victim told her that the man had brushed up against her breasts and it made her feel "nasty and dirty." (Tr., p. 710.) Unlike her brother, Michale stated that she specifically asked whether the man used his fingers to penetrate her or fondled her, and the victim denied such conduct. However, she also testified that the victim told her that the man had kissed her and taken her virginity.

**{¶40}** Appellant argues that the victim vaguely stated that the act occurred twenty times, which is insufficient to prove her allegations. This argument appears irrelevant, as the jury found him guilty of only two counts of rape. In addition, it is noted that the victim testified the acts all occurred every school day for approximately two years. As to the twenty counts of GSI, the jury's verdict on the rape counts clearly demonstrates that the jury gave careful consideration to any vagueness in the victim's allegations.

**{¶41}** Appellant next argues that the only evidence that weighs in favor of a conviction is the victim's testimony. This argument is clearly contradicted by the record. In addition to the victim's testimony, several witnesses provided testimony in support of a conviction, including the victim's mother, the victim's therapist, and Det.

Lomax. Further, although the Hoeys testified on behalf of the defense, they both acknowledged that the victim had previously told them of the abuse. Although they testified that the victim denied certain conduct occurred and failed to provide specific details, their testimony tends to support the jury's finding that at least some instances of abuse occurred.

{¶42} The victim herself gave very specific details when she testified as to the acts. She provided a time range of September 1, 1999 to September 28, 2001. While this is a lengthy range, she has maintained from the beginning that the conduct occurred every school day during her seventh and eighth grade years, thus the range is in accordance with her claims. She provided a specific location where the conduct took place, as she not only testified that the acts occurred in Appellant's car when parked on the side of the road, but specifically described this area as near the end of specifically named streets where no houses had been built. She provided that the incidents occurred at night, and she testified that each incident lasted approximately five to fifteen minutes. She also testified that during one incident, a police car pulled behind them and Appellant pulled back onto the road and drove away.

{¶43} The victim also discussed Appellant's specific actions. She testified that he would place both hands under her shirt and bra and touch her breasts. He would kiss her and insert his fingers into her vagina. Lastly, she testified that Appellant was her godfather, which appears to have been introduced to show his authority over her.

**{¶44}** The victim's basic allegations were confirmed through the testimony of Amanda Canteras, Det. Lomax, and Jamal and Michale Hoey. Each testified that she told them that she had been repeatedly sexually abused as a youngster by a family friend when he took her home in his car. Although she did not discuss specific details with each person, the witnesses' testimony tends to confirm her basic allegations. Accordingly, we find that the state presented sufficient evidence to support the convictions.

**{¶45}** We next turn to Appellant's manifest weight argument. Importantly, every witness who testified, with the exception of Appellant's daughter, stated that the victim told them that she had been abused. As this case did not involve eyewitness or physical evidence, the victim's credibility and the witnesses' corroboration of her allegations had impact. The victim was able to provide specific details about the allegations both in her police interview and at trial. Her story remained unchanged, which is significant in light of her highly specific details. Further, her story to others, while it may not have included specific detail, did involve an accusation against a family friend (Appellant is her godfather), an older man (Appellant is unquestionably older than the victim), and a car (the abuse occurred while he drove her home). We also note that because the jury found Appellant guilty of only two out of twenty rape counts, this suggests that the jury carefully considered her testimony and did not fall victim to Appellant's smoke and fire theory.

**{¶46}** Further, key witnesses for the defense, Jamal and Michael Hoey, contradicted themselves and each other at times. First, Jamal testified that the victim

denied penetration, but he admittedly believes that penetration means sexual intercourse and not digital or oral penetration. He acknowledged that he did not specifically ask the victim if the abuser had digitally penetrated or fondled her. Michale then testified that she specifically asked the victim about digital penetration and fondling and the victim denied such conduct. However, Michale then testified that the victim told her that the man had kissed her and took her virginity. Jamal also testified that at least some sexual contact may have occurred as he acknowledged the victim made a swiping motion across her chest when describing the abuse. While Jamal may have interpreted this motion as mere contact with her chest, it would be reasonable for a jury to interpret the motion as indicating sexual contact with her breasts. Finally, it is clear from the record that the Hoeys dislike the victim and it was their personal belief that she was a liar.

**{¶47}** As the jury was in the best position to judge the witnesses' credibility and we find nothing in the record to suggest that the jury's verdict created a manifest miscarriage of justice, Appellant's second assignment of error is without merit and is overruled.

<u>Conclusion</u>

**{¶48}** As an indictment that charges multiple counts of the same conduct is not inherently defective and the indictment at issue conformed to Ohio law, the indictment was sufficient to give Appellant notice of the charges against him. The victim's statements to police and her testimony support the number of counts charged against Appellant. Finally, the victim and several other witnesses presented

sufficient credible evidence of the abuse and Appellant's witnesses tended to corroborate the victim's story. This record demonstrates that the jury gave careful consideration to the credibility of each witness. Accordingly, Appellant's assignments of error are without merit and the judgment of the trial court is affirmed in full.

Donofrio, P.J., concurs.

Robb, J., concurs.