[Cite as *State v. Dunlap*, 2013-Ohio-5637.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 12 CO 31 |
| V. | ) | |
| | ) | OPINION |
| HASHIM DUNLAP, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:          Criminal Appeal from Court of Common
                                   Pleas of Columbiana County, Ohio
                                   Case No. 10CR274

JUDGMENT:                          Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellee             Robert Herron
                                   Prosecutor
                                   John E. Gamble
                                   Assistant Prosecutor
                                   105 South Market Street
                                   Lisbon, Ohio 44432

For Defendant-Appellant            Attorney Charles C. Amato
                                   Attorney Lynsey Lyle-Opalenik
                                   991 Main Street
                                   Wellsville, Ohio 43968

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

                                   Dated: December 17, 2013

DONOFRIO, J.

{¶1} Defendant-appellant, Hashim Dunlap, appeals from a Columbiana County Common Pleas Court judgment overruling his motion to suppress drug evidence found on his person during a traffic stop.

{¶2} At approximately 2:30 a.m. on January 12, 2008, St. Clair Police Officer Jayson Jackson stopped a vehicle driven by Susan Baker because it had a cracked windshield. Officer Jackson approached the vehicle. Baker was in the driver's seat, Stella Rossen was in the front passenger seat, and appellant was in the backseat on the passenger side.

{¶3} Officer Jackson noticed that appellant was "messing around with something" and "fidgeting around down inside of the seat." The officer asked appellant for identification. Appellant stated that he did not have his ID, but identified himself for the officer. Appellant continued "fidgeting around" so Officer Jackson asked him to step out of the car. Appellant stepped out and consented to a pat down. Officer Jackson conducted a pat down and found only some miscellaneous items. He did not find any weapons. Officer Jackson then inspected the backseat of the car where appellant had been sitting. He did not find anything in the car.

{¶4} Officer Jackson then asked appellant to get back in the car and he turned his attention to Baker. After learning that Baker's driver's license was suspended, Officer Jackson took her back to his cruiser to issue her a citation. While he was in his cruiser with Baker, Officer Jackson noticed that appellant was still fidgeting around in the backseat of Baker's car. Appellant's actions concerned the officer so he approached appellant and asked him to step out of the car again. Officer Jackson then asked appellant if he could pat him down one more time. Appellant complied.

{¶5} This time Officer Jackson felt a large lump near appellant's left armpit. He asked appellant what the item was and appellant told him it was his wallet. Officer Jackson removed the wallet from appellant's pocket. The officer then opened the wallet and saw approximately $1,400 in cash. Officer Jackson then returned to the pat down. This time he felt another lump in another pocket. Appellant indicated

he did not know what the item was. Officer Jackson removed it. The item was a digital scale about the size and shape of a cell phone. There was a white, powdery residue on the scale that turned out to be cocaine. Officer Jackson seized the scale.

{¶6} Eventually, on November 18, 2010, a Columbiana County Grand Jury indicted appellant on one count of possession of drugs, a fifth-degree felony in violation of R.C. 2925.11(A), with a forfeiture specification for $1,425. Appellant entered a not guilty plea.

{¶7} Appellant later filed a motion to suppress the evidence found on his person. Appellant alleged the police had no reason to search his person for a second time and had no reasonable belief that he was armed.

{¶8} The trial court held a hearing on appellant's motion where it heard testimony from Officer Jackson and Rossen. The court later overruled the motion to suppress finding it was reasonable for Officer Jackson to seize the wallet and digital scale from the sleeves of appellant's jacket.

{¶9} Subsequently, appellant changed his plea to no contest. The trial court accepted appellant's plea and entered a finding of guilt. At a later sentencing hearing, the trial court sentenced appellant to three years of community control and a six-month driver's license suspension. It also ordered forfeiture of the $1,425. The court denied appellant's request for a stay of execution

{¶10} Appellant filed a timely notice of appeal on August 22, 2012.

{¶11} Appellant raises a single assignment of error that states:

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS AS THE OFFICER'S BLATANT DISREGARD FOR DEFENDANT'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS (TO BE PROTECTED FROM UNREASONABLE SEARCHES AND SEIZURES) CAUSED THE DEFENDANT TO BE INDICTED AND SUBSEQUENTLY FOUND GUILTY OF A FIFTH DEGREE FELONY OF POSSESSION OF DRUGS CHARGE.

{¶12} Appellant states that he is not questioning whether Officer Jackson had the right to conduct the first pat down. Instead, he takes issue with the second pat down. Appellant goes on to argue that Officer Jackson had no right to remove objects from his person that did not feel like weapons to the officer. Additionally, he contends Officer Jackson should not have stopped the pat down to open the wallet he removed from appellant and to look through its contents. He contends that no reasonable officer would believe there was a weapon contained inside a wallet. In support of his position, appellant points to Officer Jackson's testimony that he did not believe the objects he removed from appellant's jacket felt like weapons. And he argues Officer Jackson was not permitted to squeeze and manipulate the items in an attempt to determine what they were. He argues that Officer Jackson was not permitted to remove the non-weapon lumps he felt in the jacket in order to further investigate the contents of the jacket.

{¶13} Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th Dist.1996), citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 802 (9th Dist.1994). Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice*, 129 Ohio App.3d 91, 94, 717 N.E.2d 351 (7th Dist.1998). A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. *Id.*

{¶14} The trial court in this case made extensive factual findings as follows. Officer Jackson stopped a four-door Plymouth near Wal-Mart when he observed that

it had a cracked windshield. Officer Jackson then observed appellant "fidgeting around" and appearing to put his hands inside the backseat where the cushions met. These movements made the officer nervous and gave him concern for his safety. Officer Jackson asked appellant why he was fidgeting and asked appellant for identification. Appellant identified himself to the officer but stated that he did not have any identification on him. Officer Jackson asked appellant to step out of the car and appellant complied.

{¶15} Officer Jackson then performed a pat-down search of appellant, testifying that he was looking for weapons. He did not find any weapons. Officer Jackson then performed a "sweep type" search of the backseat area where appellant had been sitting. This search revealed nothing. Therefore, the officer directed appellant to return to the backseat of the Plymouth. Officer Jackson did observe some pieces of wood extending across the backseat described as table legs. He admitted that the fidgeting could have been appellant trying to move the table legs in order to sit comfortably.

{¶16} Officer Jackson then turned his attention to Baker and determined that she did not have a valid driver's license. He directed Baker to his patrol car. While he was with Baker, Officer Jackson could see appellant continuing to fidget in the backseat of the Plymouth.

{¶17} Officer Jackson approached appellant again. The officer stated he was concerned for his own safety due to appellant's continued furtive movements and, therefore, asked appellant to step out of the car again. Officer Jackson then performed another pat-down search of appellant.

{¶18} This time Officer Jackson located two pockets that he had missed on the first search. The officer testified he felt a large lump near appellant's armpit. The officer admitted that the lump did not feel like a weapon. But he could not visualize what it was. He asked appellant what the lump was and appellant told the officer it was his wallet. Appellant had previously denied having any identification. Officer Jackson removed the wallet. When he opened it, he discovered approximately

$1,400. Officer Jackson then felt another lump in the other jacket pocket. Appellant told the officer he did not know what it was. Officer Jackson stated appellant's response gave him concern because he could not visualize the item. He stated it did not feel like a weapon, but that it was smooth and flat and about the size of a cell phone. He removed the item and found it to be a digital scale containing white residue.

**{¶19}** Officer Jackson testified that he believed appellant did not have any weapons at the time he removed the items from his jacket; however, he was unsure what the objects were, he was concerned they could be used as weapons, and he had suspicions because appellant had lied about not having any identification.

**{¶20}** Front-seat passenger Stella Rawson also testified but her testimony was vague and evasive and she was unable to clearly recall the events in question. Therefore, the court afforded little weight to her testimony.

**{¶21}** The trial court's factual findings are supported by competent, credible evidence.

**{¶22}** Officer Jackson testified that he stopped Baker's vehicle because he noticed it had a broken windshield. (Tr. 7). When he approached the vehicle, he saw appellant in the backseat "messing around with something" and "fidgeting around down inside of the seat." (Tr. 7). These movements made the officer uncomfortable. (Tr. 9). Officer Jackson asked appellant for identification. (Tr. 9). Appellant identified himself but stated he did not have any identification. (Tr. 9-10). Appellant continued to fidget so Officer Jackson asked him to step out of the car. (Tr. 10). Appellant complied. (Tr. 11). Officer Jackson then asked appellant if he could pat him down and appellant consented. (Tr. 11). The officer patted down the outside of appellant's pockets and felt around his waist. (Tr. 12). Officer Jackson stated that he found some keys and miscellaneous items. (Tr. 12). He found no weapons. (Tr. 12). Officer Jackson then checked the seat area in the car where appellant had been sitting. (Tr. 13). He did not find anything there so he told appellant to sit back in the car. (Tr. 13).

**{¶23}** Officer Jackson testified he then turned his attention to Baker. (Tr. 13). He learned she was driving under suspension so he took her back to his cruiser to issue her a citation. (Tr. 13). While he was with Baker, Officer Jackson noticed appellant was still fidgeting in the backseat of the car. (Tr. 14). He stated he was concerned since he was alone and he was dealing with two people. (Tr. 14). So the officer approached appellant again and asked what he was doing. (Tr. 14-15). Appellant told him there was a wooden item under him and he was trying to move it. (Tr. 15).

**{¶24}** Officer Jackson then told appellant to step out of the car again. (Tr. 15). He asked appellant if he could pat him down again and appellant complied. (Tr. 15). The officer noticed that he had missed some pockets on appellant's jacket near his shoulder. (Tr. 15). In one of the pockets Officer Jackson felt a large lump. (Tr. 16). He asked appellant what the lump was and appellant told him it was his wallet. (Tr. 16). Officer Jackson then removed the wallet from appellant's pocket. (Tr. 16). He opened the wallet and found appellant's identification and approximately $1,400 in cash. (Tr. 19-20). The officer continued to search appellant and located another lump in the other pocket. (Tr. 17). Officer Jackson asked appellant what the lump was and appellant responded that he did not know. (Tr. 17). This made the officer "a little" nervous. (Tr. 18). Officer Jackson then opened the pocket and appellant told him the jacket did not belong to him. (Tr. 18). Officer Jackson removed a digital scale with some white, powdery residue on it. (Tr. 18). The scale looked to be about the size and shape of a cell phone. (Tr. 31; Ex. 1).

**{¶25}** On cross-examination, Officer Jackson testified that during the first pat-down search of appellant he was looking for weapons and did not feel any. (Tr. 26). He also admitted that he checked the backseat area of the car where appellant had been sitting. (Tr. 27). The only things he found there were some table legs, which corroborated appellant's statement that there was something under him in the car and that was why he had been moving around. (Tr. 27). Officer Jackson stated that the second time he patted appellant down, he was still looking for weapons. (Tr. 29).

**{¶26}** The officer repeatedly admitted that when he felt the wallet in appellant's pocket it did not feel like a weapon. (Tr. 30, 33, 35, 43, 45). However, he removed it because appellant had lied about not having his identification. (Tr. 32). And the officer stated that when he felt the scale in appellant's pocket it felt smooth and flat, not sharp. (Tr. 31). Officer Jackson stated numerous times that the scale did not feel like a weapon. (Tr. 31, 32, 33, 45). When asked why he removed the scale when it did not feel like a weapon, Officer Jackson stated that he was not comfortable with appellant because appellant had lied about not having his identification, appellant had a large sum of money in his wallet, and he could not visually see if the hard, smooth object in appellant's pocket could come apart and become a weapon. (Tr. 33). The officer also testified that once he saw appellant's wallet with a large sum of money, he suspected that appellant had lied to him and had something to hide other than his wallet. (Tr. 44-45). He thought appellant might have something illegal. (Tr. 45).

**{¶27}** This evidence supports the trial court's findings of fact. Thus, we accept the court's factual findings and move on to consider whether the trial court applied the appropriate legal standard.

**{¶28}** The Fourth Amendment provides that "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." Warrantless searches are per se unreasonable unless the search falls within a noted exception. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The United States Supreme Court set out one such exception in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). According to *Terry*, a police officer may frisk a person who is legally stopped if the officer "has reason to believe that he is dealing with an armed and dangerous individual." *Id.* at 27. In justifying a *Terry* stop, the officer "must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. An officer cannot conduct a protective search as a pretext for a search for contraband, a

search for convenience, or as part of his or her normal routine or practice. *State v. Stiles*, 11th Dist. No.2002-A-0078, 2003-Ohio-5535, ¶16, citing *State v. Evans*, 67 Ohio St.3d 405, 414, 618 N.E.2d 162 (1993); *Minnesota v. Dickerson*, 508 U.S. 366, 378, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Lozada*, 92 Ohio St.3d at 77, 748 N.E.2d 520.

{¶29} When determining whether a *Terry* stop was reasonable, we are to look to the totality of the circumstances. *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). Additionally, we are to view these circumstances through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. *Id.* at 87-88.

{¶30} Appellant does not take issue with the traffic stop. Therefore, we will only briefly touch upon it. There is no question here that the traffic stop was reasonable. Officer Jackson observed a vehicle travelling with a cracked windshield. He therefore effectuated a traffic stop of Baker's car. He learned that Baker was driving with a suspended license and issued her a citation. Thus, the traffic stop was reasonable.

{¶31} The first issue in this case surrounds whether the frisks of appellant were reasonable.

{¶32} The first frisk of appellant was reasonable. When Officer Jackson initially stopped Baker's car, he noticed appellant fidgeting around in the backseat and sticking his hands in the seat. The officer did not know what he was dealing with at this point. It was reasonable for him to direct appellant to exit the car for a *Terry* pat down. The officer frisked appellant and found no weapons on him. He then searched the backseat of the car where appellant had been sitting. The officer found nothing there except for some wooden table legs. At this point the officer directed appellant to return to the backseat of Baker's car while he took Baker to his cruiser to issue a citation. Officer Jackson must have felt comfortable enough that appellant did not have any weapons on his person or in the backseat of the car to allow him to get back in that car while the officer tended to the business of issuing Baker a

citation.

**{¶33}** Whether the second frisk of appellant was reasonable is not quite as clear. The rationale for a protective *Terry* search "becomes attenuated with successive searches." *State v. Hackett*, 171 Ohio App.3d 235, 2007-Ohio-1868, 870 N.E.2d 235, ¶16. Thus, the basis for a *Terry* search is diminished each additional time an officer searches a subject. "Police are not entitled to 'unlimited bites of the apple.'" *Id.*, citing *United States v. Davis*, 430 F.3d 345, 356 (C.A.6, 2005).

**{¶34}** Officer Jackson testified that during the first pat down, he was looking for weapons on appellant and did not find any. He also searched the backseat of the car and found no weapons. What he did find in the backseat were some wooden table legs. When Officer Jackson noticed appellant in the backseat fidgeting around after having already searched him, appellant told him there was something underneath him and he was trying to move it. And Officer Jackson knew this to be true because he had seen the table legs in the backseat. Given the fact that Officer Jackson had already searched both appellant and the backseat, appellant's response was reasonable.

**{¶35}** A *Terry* pat down is limited in scope to its protective purpose and cannot be used by the officer to search for evidence of crime. *Evans*, 67 Ohio St.3d at 414. Once the officer has satisfied himself that the suspect does not have a weapon, he is no longer justified in using *Terry* as a pretext for a contraband search. *Id.*

**{¶36}** Officer Jackson seemed to have satisfied himself that appellant did not have a weapon after the first pat down. The officer allowed appellant to return to the backseat of Baker's car. Clearly, if the officer had any suspicion that appellant had a weapon on his person he would not have allowed appellant to return to Baker's car alone while the officer went with Baker to the patrol car.

**{¶37}** But appellant's continued fidgeting in the backseat of the car led Officer Jackson to become uncomfortable with him. Moreover, appellant consented to Officer Jackson patting him down once again. Thus, the second pat down was also

reasonable.

**{¶38}** The next issue is whether it was reasonable for Officer Jackson to remove the wallet from appellant's jacket.

**{¶39}** When a police officer conducts a protective *Terry* frisk, the pat down is limited to its protective purpose and cannot be used to search for evidence of crime. *Evans*, 67 Ohio St.3d at 414; *Terry*, 392 U.S. at 29. The Ohio Supreme Court has noted:

> [I]t is important first to emphasize that *Terry* does not require that the officer be absolutely convinced that the object he feels is a weapon before grounds exist to remove the object. At the same time, a hunch or inarticulable suspicion that the object is a weapon of some sort will not provide a sufficient basis to uphold a further intrusion into the clothing of a suspect. When an officer removes an object that is not a weapon, the proper question to ask is whether that officer reasonably believed, due to the object's "size or density," that it could be a weapon. 3 LaFave, Search and Seizure (2 Ed.1987) 521, Section 9.4(c).

*Evans*, 67 Ohio St.3d at 415. The *Evans* Court continued, "'[s]omewhat more leeway must be allowed upon "the feeling of a hard object of substantial size, the precise shape or nature of which is not discernible through outer clothing," which is most likely to occur when the suspect is wearing heavy clothing.'" *Id.*, quoting LaFave at 523.

**{¶40}** When Officer Jackson felt the first lump in appellant's pocket, he could tell that it was not a weapon. Officer Jackson stated at least five times that the wallet did not feel like a weapon. And while Officer Jackson was concerned that appellant may have lied about not having any identification with him, he at no time suspected that the lump that was appellant's wallet could be a weapon.

**{¶41}** During a *Terry*-investigative stop, an officer "may search only for weapons when conducting a pat down of the suspect." *Evans*, 67 Ohio St.3d at 414.

"The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

{¶42} Given *Terry's* narrow-tailored purpose and Officer Jackson's unequivocal statements the wallet did not feel like a weapon, the removal of the wallet was unreasonable.

{¶43} The final issue is whether it was reasonable for Officer Jackson to remove the digital scale from appellant's jacket.

{¶44} The officer stated he removed the scale because he could not visually see if the object pulled apart and became a weapon. But Officer Jackson testified at least four times that the object did not feel like a weapon. He stated that it felt like a smooth, hard object. Officer Jackson also testified that after he saw the money in appellant's wallet and learned that appellant had lied about not having his identification, he suspected that appellant had something illegal on him. But as discussed above, Officer Jackson should not have removed appellant's wallet from his pocket. Moreover, a *Terry* search may not be employed to search for contraband. Based on the totality of Officer Jackson's testimony, it seems that he removed the digital scale because he suspected some sort of contraband. Thus, the removal of the scale from appellant's pocket was unreasonable.

{¶45} Additionally, we address the state's argument that once Officer Jackson found appellant's wallet and realized appellant had lied to him about not having identification, the officer could have arrested appellant for falsification and, therefore, the further search that revealed the scale was a search incident to a lawful arrest.

{¶46} This argument is flawed for two reasons. First, as stated above, the removal of the wallet was unreasonable. Second, Officer Jackson offered no testimony to support this theory. He never once suggested that he placed appellant under arrest for falsification. And after he found the wallet on appellant, the officer

continued his search. He did not place appellant under arrest at that time. Without an arrest, a warrantless search of a subject may not be justified as incident to an arrest. *Hackett*, 171 Ohio App.3d at ¶15, citing *State v. Rampey*, 5th Dist. No. 2004-CA-00102, 2006-Ohio-1383, ¶21. Thus, the state's argument on this point must fail.

**{¶47}** Accordingly, appellant's sole assignment of error has merit.

**{¶48}** For the reasons stated above, the trial court's judgment is hereby reversed. The matter is remanded to the trial court for further proceedings according to law and consistent with this opinion and the evidence of the wallet and the digital scale shall be suppressed.

Waite, J., concurs.

DeGenaro, P.J., concurs.