[Cite as *State v. Roberts*, 2016-Ohio-4806.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NOS. 14 CO 0004 |
| VS. | ) | 14 CO 0005 |
| | ) | 14 CO 0006 |
| CORTEZ L. ROBERTS, | ) | |
| | ) | OPINION |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from East Liverpool
Municipal Court, Columbiana County,
Ohio
Case Nos.13 CR B 1019, 13 CR B 1034,
13 CR B 1036

JUDGMENT:                   Affirmed.

APPEARANCES:
For Plaintiff-Appellee            Attorney Timothy McNicol
                                  Assistant Law Director
                                  126 W. 6th Street
                                  East Liverpool, Ohio 43920

For Defendant-Appellant           Attorney Dominic Frank
                                  1717 Lisbon Street
                                  East Liverpool, Ohio 43920

JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: June 30, 2016

DeGENARO, J.

{¶1} Defendant-Appellant, Cortez L. Roberts, appeals the judgments of the East Liverpool Municipal Court convicting him of three counts of falsification. On appeal, Roberts asserts that the trial court erred by failing to find that his interaction with the police was a violation of his Fourth Amendment right to be free from unlawful search and seizure. No Fourth Amendment violation occurred because a reasonable articulable suspicion justified the search. Accordingly, Roberts' sole assignment of error is meritless, and the judgment of the trial court is affirmed.

## Facts and Procedure

{¶2} Roberts used a false identity on three occasions and was charged with three counts of falsification, R.C. 2921.13(A)(3). Roberts filed a motion to suppress evidence which the trial court overruled. The following facts are gleaned from the trial court's judgment entry denying suppression and the testimony presented during the suppression hearing from three witnesses: Detective Donald Fickes and Patrolman Greg Smith of the East Liverpool Police Department (ELPD) and Patrolman James Briggs of the St. Clair Township Police Department (SCPD).

{¶3} Fickes and Smith of the ELPD were called to a burglary at a residence in East Liverpool sometime during the late evening of May 5 or early morning of May 6. The victim returned home during the burglary and saw a blue Pacifica with Ohio temporary tags at the scene; she described the occupants as a short African-American male and an older white male. A third suspect, Brandon Stevens, was apprehended at the scene. Stevens told officers that Brian Murphy was involved in the burglary; that Murphy was in the Pacifica with a short African-American male, but Stevens did not know his name.

{¶4} Smith advised Fickes at the scene of the burglary that he was familiar with the Pacifica. Murphy's girlfriend, Julie Vincent, lives near Smith, and he had observed the Pacifica at that residence more than once. Julie's daughter Brittany is the owner of the vehicle.

{¶5} On the morning of May 6 Patrolman Briggs received a call from Fickes that a blue Pacifica with Ohio temporary tags was sought by ELPD in connection with

a burglary the night before. Briggs was familiar with the vehicle because two or three weeks prior to the burglary he was the backup officer on a traffic stop involving the Pacifica. There were two occupants in the Pacifica during that stop. Brittany Vincent was the driver and the passenger was an African-American male who presented a Georgia driver's license with the name Brian Slater. During the suppression hearing, Briggs identified Roberts as the male passenger

{¶6} Sometime after speaking with Fickes, Briggs received a call from Smith, who was off-duty at the time, and relayed to Briggs that he had observed the Pacifica in the parking lot of a local mini mart with an African-American male driver and a white male passenger. Smith could not see if there was anyone else in the Pacifica because of the window tint. Smith called Briggs a second time to advise that he could see the Pacifica was now parked in the Bruster's Ice Cream parking lot.

{¶7} Briggs notified Detective Brian McKenzie of the SCPD that he had the Pacifica under observation from the mini mart and waited for Det. McKenzie to arrive for backup. Briggs could only see the driver because of the window tinting. Bruster's was open at the time, but no one exited the vehicle to purchase ice cream. Briggs estimated that he watched the Pacifica for five to ten minutes until McKenzie arrived. When McKenzie arrived at the mini mart, they proceeded to the Bruster's parking lot to initiate the stop for an identification check.

{¶8} Briggs approached the driver, later identified in court as Roberts, who presented Briggs with a Georgia driver's license with the name Brian Slater. McKenzie approached the Pacifica on the passenger side.

{¶9} While Briggs checked the license presented by Roberts, McKenzie observed a firearm on one of the passengers. All three occupants in the Pacifica were instructed to exit the vehicle. McKenzie handcuffed the passenger with the weapon, and Briggs secured the firearm in his patrol car.

{¶10} Shortly thereafter, Fickes and another detective from ELPD arrived. Fickes wanted to speak to Roberts as he was the only occupant of the Pacifica who matched a description of the suspects. Roberts identified himself to Fickes as Brian

Slater. Fickes asked Roberts if he was willing to come to the ELPD station to talk about the burglary. Roberts agreed and rode to the station with the other detective and Fickes, who described Roberts as very cooperative.

**{¶11}** Prior to taking a statement, Fickes informed Roberts of his *Miranda* rights and asked him to sign a *Miranda* waiver. Roberts signed the name Brian Slater. Roberts also produced a Georgia license to Fickes indicating he was Brian Slater. Fickes later received information from SCPD that Brian Slater was actually Roberts, which Fickes also confirmed with a Michigan police department.

**{¶12}** Roberts was charged with three counts of falsification for the three separate occurrences when he used the identity of Brian Slater: 1) when he presented the license during the first traffic stop with Briggs when he was a passenger in the Pacifica being driven by Brittany Vincent; 2) when he presented the license to Briggs during the encounter in the Bruster's parking lot; and 3) when he presented the license to Fickes at the ELPD station and signed his Miranda waiver.

**{¶13}** Roberts filed a motion to suppress which the trial court denied concluding that the encounter with law enforcement was consensual. Pursuant to a plea agreement, Roberts pled no contest to all three charges, and the trial court made findings of guilt. Roberts was sentenced to 45 days in jail on each of the three counts, to run concurrently to one another. Roberts' sentence was stayed pending appeal.

**{¶14}** In his sole assignment of error, Roberts asserts:

> The trial court erred to the prejudice of the Appellant when it found the encounter between Appellant and the arresting officers was consensual and not a stop conducted of Appellant to investigate a completed crime and as such there was no violation of Appellant's Fourth Amendment rights against unlawful search and seizure.

**{¶15}** "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role

of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100 citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). A trial court's factual findings are given great deference, and an appellate court will not disturb those findings if they are supported by competent, credible evidence. *State v. Fornore*, 7th Dist. No. 11 CO 36, 2012-Ohio-5339, ¶ 23. Questions of law are reviewed de novo. *Id.,* citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶16} The trial court concluded the encounter was consensual while Roberts argues it was an investigatory stop. The trial court found that a blue Pacifica with Ohio temporary tags was involved in the burglary, and one of the occupants was identified by the victim and the third suspect was an African-American male. The trial court further found that "the officers did not need articulable suspicion for a *Terry* stop or probable cause for a stop. The vehicle was parked * * * in the private business lot for about ten (10) minutes without any occupant(s) buying ice cream which Officer Briggs felt was suspicious. He and another officer approached the vehicle to ascertain who was in the vehicle that matched the description of a vehicle involved in a [b]urglary hours before."

{¶17} An investigatory stop does not require probable cause; rather, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion". *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). Officers may rely on their own experience and training to make inferences and deductions about the cumulative information available to them in forming reasonable, articulable suspicion. *State v. Smith*, 7th Dist. No. 13 CO 10, 2014-Ohio-2933, ¶ 11. The reasonableness of a *Terry* stop is analyzed by looking at the totality of the circumstances through the eyes of a reasonable and prudent police officer. *State v. Dunlap*, 7th Dist. No. 12 CO 31, 2013-Ohio-5637, ¶ 29.

{¶18} *Terry* stops may also be used to investigate persons suspected of being

involved in completed felonies. *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). "[W]here police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice." *Id.* In evaluating the propriety of a completed crime investigatory stop, the focus centers on whether the officer possessed reasonable suspicion to make the stop. *Id.* at 231. The Second District articulated the test used to determine whether a seizure has occurred: "A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." *State v. Taylor,* 106 Ohio App.3d 741, 748, 667 N.E.2d 60 (2d Dist.1995), citing *Terry.*

**{¶19}** Roberts argues that no reasonable person would have believed he was free to leave or refuse to answer questions, and alternatively, that this was a warrantless, investigatory stop governed by the constitutional standards in *Terry*. The trial court found the encounter was consensual, relying on *State v. Jennings,* 10th Dist. No. 12AP-179, 2013-Ohio-2736.

**{¶20}** In *Jennings*, the officer was on patrol when he came upon a parked vehicle at an apartment complex. *Id.* at ¶ 2. The vehicle's hood was up, and Jennings was standing next to the car. *Id.* Upon spotting the police cruiser, the officer reported that Jennings acted "panicked" and began to nervously walk towards the open hood of the vehicle. *Id.* at ¶ 8. The officer pulled into the lot and asked Jennings to sit on the sidewalk and talk with him. *Id.* at ¶ 2. Instead of complying, Jennings attempted to shut the hood, failed, tried again, and then succeeded. *Id.* The officer had tried to prevent him from shutting the hood. *Id.* Jennings then sat on the sidewalk, and the officer opened the hood, where he discovered crack cocaine and a crack pipe. *Id.* The Tenth District held this encounter to be consensual, even though the officer had acted in a manner which restricted the suspect's freedom of movement. *Id.* at ¶ 12.

**{¶21}** The encounter with Roberts in the Bruster's parking lot involved a parked car in a public place as in *Jennings*. However, the Pacifica would not have been approached, or even monitored with such interest by law enforcement had it not been for the knowledge of a completed felony committed hours earlier involving a blue Pacifica with Ohio temporary tags and one of the suspects was an African-American male. Thus, the encounter was an investigatory stop of a completed crime. Similar to a *Terry* stop, an investigatory stop of a completed crime is analyzed for whether or not, under the totality of the circumstances, the reasonably prudent officer would have found "reasonable articulable suspicion" to justify the intrusion into a person's Fourth Amendment rights. *See Terry*, *Hensley*.

**{¶22}** Evaluating the facts here, the officers had reasonable, articulable suspicion to stop the vehicle. The officers knew the owner of the blue Pacifica and her connection to a suspect of the burglary. A vehicle matching the Pacifica's description was noted as leaving the scene of the completed burglary. The owner of the vehicle lived in the area in which Officer Smith observed the car. All of these factors indicate that law enforcement had reasonable, articulable suspicion. Under the totality of the circumstances, the investigatory stop of the Pacifica in the Bruster's parking lot did not violate the Fourth Amendment as it was based on reasonable articulable suspicion. Accordingly, Roberts' assignment of error is meritless.

**{¶23}** We recognize that the trial court denied suppression as a matter of law, reasoning that based upon the facts, the encounter with Roberts was consensual. While the trial court's factual findings when considering suppression are accorded deference, questions of law are reviewed de novo. *Fornore*, *Burnside*. Here, the trial court reached the right result but for the wrong reason. Where the trial court enters a legally correct judgment but articulates an incorrect rationale for doing so, a court of appeals nonetheless affirms as a matter of law, because there has been no prejudice to the appealing party. App.R. 12(B).

**{¶24}** Roberts' sole assignment of error is meritless. The encounter between police and Roberts was an investigatory stop supported by reasonable,

articulable suspicion and no Fourth Amendment violation occurred. As such, Roberts' sole assignment of error is meritless, and the judgment of the trial court is affirmed.

Waite, J., concurs.

Robb, J., concurs.