[Cite as *Valentine v. Kroger Co.*, 2025-Ohio-3129.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

THOMAS VALENTINE,

Plaintiff-Appellant,

v.

THE KROGER COMPANY,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 JE 0002

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 22-CV-443

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

Thomas Valentine, Pro se, Plaintiff-Appellant

*Atty. Anne Marie Schloemer* and *Atty. Rebecca J. Johnson*, Perez Morris, LLC, for
Defendant-Appellee

Dated:  September 2, 2025

---

**WAITE, J.**

{¶1} Appellant Thomas Valentine appeals a January 3, 2025 judgment entry of the Jefferson County Court of Common Pleas. Appellant challenges the trial court's decision to grant summary judgment in favor of Appellee, The Kroger Company. Appellant argues that the court erred when it rushed through the case management schedule after it had delayed in issuing a scheduling order for eighteen months. Appellant also contends the court erred in finding that he lacked standing to bring his claims, and finding that he failed to establish damages. Although for reasons other than those used by the trial court, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

## Factual and Procedural History

{¶2} The incident on appeal tangentially involves COVID-19 directives from the Ohio Governor's Office, specifically the face mask requirements. On July 22, 2020, the Ohio Governor's Office issued a mask mandate as part of its efforts to combat the COVID-19 pandemic. The mandate provided that Ohio residents were required to wear a face mask while in public. There were some exceptions to the mandate, including an exception for a person with a medical condition who would be adversely affected by the mandate.

{¶3} On November 19, 2020, Appellant entered a Kroger grocery store, located in Steubenville, without a face mask. An employee of the store approached Appellant to remind Appellant of the masking mandate. Appellant told the employee that he was exempt because of a medical condition. Allegedly, the employee asked Appellant about his medical condition and the reason for his exemption. Appellant reluctantly provided

the employee with information about this condition. Appellant contends he was caught off guard by the request, and was sensitive about revealing his medical condition. After disclosing it to the employee, Appellant claims the employee wrote his information down on a piece of paper that Appellant believed contained similar information from other shoppers. Regardless, Appellant entered the store that day without wearing a face mask and completed his shopping without interference.

{¶4} While Appellant completed his shopping, checked out and paid for his groceries, and left the premises without issue, he claims he later became concerned about the paper on which the employee had written his medical information. He feared that record would not be properly stored and feared others might see it.

{¶5} Appellee contends the incident described by Appellant never occurred. Appellee submitted its face mask policy during the course of the case. This policy provided that if a customer entered the store without wearing a face mask and claimed an exemption due to a medical condition, employees were to provide information to the customer about online shopping pickup or delivery options. However, it was not the store's policy to deny entrance to the store based on the lack of a face mask. Further, no policy instructed an employee to ask for information about shoppers' medical conditions, and employees were not provided any training in furtherance of such a practice. The Ohio Governor's Office ended its face mask mandate on June 2, 2021.

{¶6} On November 18, 2022, Appellant filed a complaint against Appellee asserting claims based on both federal and state law: Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"); and Ohio Revised Code Section 4112. Appellee filed an answer on December 21, 2022.

Case No. 25 JE 0002

**{¶7}** No action was taken by either party or the court for eighteen months. On March 22, 2024, the trial court filed an entry stating that the matter would be dismissed if no action was taken by April 22, 2024. Appellant contends that he was confused by this entry, as he believed no action in furtherance of the matter could be taken until the trial court issued a scheduling order. Hence, Appellant claims he was waiting for the trial court's scheduling order to advance his case. Appellant filed a "motion for entry of confidentially order," which the court denied as "overly broad, filed prematurely." (6/4/24 J.E.) However, within the entry denying Appellant's request, the court set a pretrial conference to establish a scheduling order. On August 2, 2024, the court granted a stipulated protective order.

**{¶8}** On October 22, 2024, Appellee filed a motion for summary judgment. Appellant filed a response but did not file a reciprocal motion. On December 9, 2024, the court held a hearing on Appellee's motion. On January 3, 2025, the court filed a judgment entry dismissing all claims as a matter of law after determining that the claims were barred for a lack of standing and damages. We note that although the court held a hearing and the court reporter has indicated that those transcripts are available, they have not been requested or filed by Appellant on appeal.

Summary Judgment

**{¶9}** An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co*., 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a

matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist.1995).

{¶10} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id*. at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386 (8th Dist.1997).

{¶11} The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

ASSIGNMENTS OF ERROR NOS. 1, 2, AND 3

The trial court erred in finding Plaintiff did not have standing.

Case No. 25 JE 0002

The trial court erred in finding Plaintiff did not have damages.

The trial court erred in declaring that there were no genuine issues of material fact.

{¶12} As to standing, Appellant concedes that he lacked standing to raise his ADA claims. However, he believes the court did not separately consider his claim brought pursuant to R.C. 4112, and failed to evaluate the merits of that claim. He argues that R.C. 4112 is remedial in nature and does not require the threat of future harm where a person with a disability is affected by an act of discrimination.

{¶13} Appellant also challenges the court's determination that he failed to establish damages. Appellant argues that he could have established damages based on emotional distress through his testimony had the matter gone to trial, and that a violation of the statute automatically entitles an injured person to certain damages.

{¶14} Appellant further contends the court erred in granting summary judgment in Appellee's favor, as there were several issues of genuine material fact in dispute in this matter, including whether the incident at issue actually occurred. As Appellee claims that the incident never happened, Appellant contends the court could not rule on the ultimate issues of law until it established whether or not the incident had, in fact, occurred.

{¶15} Appellee responds by asserting that as the Ohio mask mandate was lifted prior to the filing of this complaint, this stripped Appellant of any standing to raise any of his claims. Appellee posits that Appellant did not allege that actual harm resulted from the alleged incident, as he concedes he was allowed to complete his shopping without a

face mask. Thus, Appellant cannot show actual harm or any significant possibility of future harm.

{¶16} In regard to Appellant's damages argument, Appellee points out that the record shows Appellant did not raise emotional distress, and he admitted he sustained no monetary damages.

{¶17} It is important, here, to consider the timeline of this case. While Appellant initially raised claims involving both the ADA and R.C. 4112, he abandoned all federal claims prior to summary judgment, leaving only the state claim based on R.C. 4112. R.C. 4112.02(G) provides that it is an unlawful discriminatory practice:

> For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

{¶18} In order to successfully pursue an R.C. 4112.02(G) claim, a party must show that he or she was denied full enjoyment of a place of public accommodation. Thus, the injured party must show two things: (1) the place at issue is public in nature, and (2) that he or she was denied full enjoyment of that place. There is no question that Kroger is a public place, as it is a grocery store. Full enjoyment of a grocery store would involve being able to enter the store, shop, purchase groceries and/or other goods, and leave the store with those goods.

**{¶19}** As this matter was decided in summary judgment, we presume Appellant's version of the facts are true. Appellant conceded throughout that the store employee who allegedly approached him did not prevent him from entering the store. While he was stopped and questioned about his failure to wear a face mask, he was allowed to enter without a face mask. Appellant's version of the facts admit that the detainment was brief, limited to asking about Appellant's lack of a face mask and asking about the medical condition that exempted him from this requirement. After that brief encounter, Appellant admits he entered the store, shopped without any interruption or additional questions, and was able to check out with his groceries. He conceded he was able to purchase those groceries and leave the store with his items and without issue. Thus, he admits he was fully able to enjoy the store and was afforded the ability to shop without a face mask.

**{¶20}** Appellant heavily relies on *Cooley v. Aevum Hotels, LLC*, 2022 WL 3042590, (S.D.Ohio Aug. 2, 2022). We first note that *Cooley* is a federal case, and not binding on this Court. Even so, there are significant factual differences between *Cooley* and the instant matter. In *Cooley*, a man with hearing and vision impairments sought to stay at the defendant's hotel, but his request to bring his service dog was denied. As a result of this denial, he was unable to stay at the hotel, causing him to experience panic attacks, shortness of breath, and heart palpitations. *Id*. at *2. One of the claims plaintiff raised was based on R.C. 4112.99. Significantly, the claim alleged the plaintiff was a disabled person who had been denied access to a place of public accommodation, as he was unable to stay at the hotel without his service animal.

**{¶21}** Appellant, however, at no time contended he was denied access to a place of public accommodation. The basis for his action does not involve denial of an

accommodation or access to a public place, but is based on his discomfort that he allegedly was asked to reveal his medical condition and this information was written in some type of log. He readily concedes that the store employee allowed him to enter the store without a face mask and he was able to complete his shopping uninterrupted. He admits that he was not troubled about the incident until he got home and became concerned about who might see the information and how it might be stored. Thus, it is readily apparent Appellant has raised no R.C. 4112.02(G) claim, here. Instead, Appellant has alleged facts that may, at best, give rise to some sort of invasion of privacy or emotional distress claim. However, Appellant's complaint contained no assertions related to invasion of privacy or emotional distress. Based on a plain reading of Appellant's complaint together with all evidence of record submitted in summary judgment, it is readily apparent that Appellant failed to meet the elements of the claim alleged in his complaint. While the trial court based its decision on lack of standing and failure to allege damages, this record reflects that Appellant has failed to support any element of his claim, and actually concedes this in his own admissions. Even accepting Appellant's version of the facts as entirely true, Appellant has failed to state a claim on which to base his requested recovery.

{¶22} While the court's basis for its decision is flawed, the ultimate decision to grant summary judgment in favor of Appellee is correct. "Where the trial court reaches the right result, but for the wrong reasons, an appellate court will affirm the judgment if it is legally correct on other grounds." *State v. Sayles*, 2025-Ohio-290, ¶ 13 (7th Dist.), citing *State v. Roberts*, 2016-Ohio-4806, ¶ 23 (7th Dist.); App.R. 12(B). The rationale for this principal stems from the lack of prejudice to the appealing party. *Id*.

**{¶23}** Accordingly, Appellant's first, second, and third assignments of error are without merit and are overruled.

<u>ASSIGNMENT OF ERROR NO. 4</u>

The trial court erred in limiting discovery.

**{¶24}** Appellant's complaints, here, are based on the trial court's handling of the case management schedule. Appellant believes the Jefferson County local rules provide that the trial court is to initiate the case by scheduling a pretrial conference, which would then trigger a scheduling order, allowing the matter to proceed. Appellant asserts that he waited for a pretrial conference to be scheduled, and assumed that the lengthy delay was indicative of a backlog in the court's schedule. When the court threatened to dismiss the case for failure of prosecution, he filed a motion which eventually caused the trial court to schedule the pretrial conference. He claims that he objected to the hurried pace of discovery at the pretrial conference, but the court responded by informing him that the Ohio Supreme Court mandated the court to dispose of civil cases within a two-year period. Appellant contends the court developed its case management timeline solely to adhere to that mandate, which gave the parties almost no time to complete discovery.

**{¶25}** Appellee does not dispute Appellant's assertions. Instead, Appellee contends the issue is waived, because Appellant did not properly raise it before the trial court. In the event that this issue has not been waived, Appellee urges that a *pro se* party is presumed to have knowledge of the law and be held to the same standard as a litigant represented by counsel.

<u>Case No. 25 JE 0002</u>

**{¶26}** We note that Appellant did raise this issue to the trial court, however, his actions were not in the form of an objection. On October 24, 2024, Appellant filed a motion for an extension in which to respond to Appellee's motion for summary judgment. In the motion, Appellant cited Jefferson County Local Rule XI(A), which provides that the court sets pretrial and scheduling conference dates and times. He explained he believed the rule meant that no action could be taken towards prosecution of the matter until that conference was scheduled. He believed the failure of the court to schedule this conference simply meant the court was backlogged. In his motion, he also referenced the court's statement that it was mandated to resolve the case within two years. Appellant took issue with the time this left for discovery and motion practice, and complained that the seven days given by the court for him to respond to the motion for summary judgment was insufficient. The court granted his request for additional time.

**{¶27}** Although Appellee asserts that this Court should not consider the issue because it was not properly raised below, this triggers a plain error review, not complete dismissal. A three-part test is employed to determine whether plain error exists. *State v. Billman*, 2013-Ohio-5774, ¶ 25 (7th Dist.), citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

> First, there must be an error, i.e. a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

*Billman* at ¶ 25.

{¶28} Although the parties do not cite the relevant rules, Civ.R. 16(B)(1) addresses a trial court's duty to provide a scheduling order:

> (1)  Scheduling Order. Except for matters listed in Civ.R. 1(C), the court shall issue a scheduling order:

> (a)  after receiving the parties' report under Civ. R. 26(F);

> (b)    after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference; or

> (c)  *sua sponte* by the court.

{¶29} Subsection (a) of this section refers to a parties' report, described within Civ.R. 26(F).  That rule requires the parties to essentially generate a discovery plan, and include any agreed upon deadlines, the subjects of discovery, and any issues that have arisen between the parties concerning discovery.

{¶30} Civ.R. 16(B)(2) supplements the requirements and provides a timing component within which the trial court *shall* issue the scheduling order:

> (2)  Time to Issue. The court shall issue the scheduling order as soon as practicable, but unless the court finds good cause for delay, the court shall issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has responded to the complaint.

Civ.R. 16.

{¶31} The driving force behind Civ.R. 16 "is to promote greater consistency, predictability, and transparency for attorneys, parties, and unrepresented parties in courts across Ohio." *State v. Byers*, 2025-Ohio-1511, ¶ 23 (10th Dist.), citing 2020 Staff Note, Civ.R. 16.

{¶32} Jefferson County Local Rule XI(A) states that "[p]retrial and scheduling conferences shall be held at a time selected by the Trial Judge." Jefferson County Local Rule XI(B) provides that "[p]retrial and scheduling conferences shall be held in chambers, or at such other place as the Court shall direct. The Court shall provide notice to all counsel or the parties, if unrepresented by counsel, of the time, date, and place of the pretrial conference."

{¶33} When read together as a whole, the civil rules provide a court is to issue its scheduling order within sixty or ninety days, but the dates of the pretrial and scheduling conference are set using the discretion of the court. While the order is to be entered within a specific time period, the actual conference dates and times are determined by the court in its discretion.

{¶34} Appellant filed his complaint on November 18, 2022. Appellee filed its answer on December 21, 2022. The trial court did not issue a scheduling order until July 18, 2024, twenty months after the complaint was filed and approximately nineteen months after filing of the answer. Thus, the court failed to timely issue a scheduling order. The question becomes whether this error rises to the level of reversible error.

{¶35} In a Tenth District case, the appellant argued on appeal that the trial court's failure to issue a scheduling order prevented the court from maintaining control of the

schedule and prevented a trial. *Byers, supra.* While acknowledging the error by the court in failing to timely issue a scheduling order, the *Byers* court found that the appellant failed to establish prejudice. The court explained the parties were able to conduct mediation, engage in settlement negotiations, and file dispositive motions. *Id.* at ¶ 24. The court noted the appellant could not cite to a deadline or hearing that she missed because of a lack of a scheduling order or the age of the case. Importantly, the court ultimately held that a successful motion for summary judgment had terminated the case, not some inability to hold a trial. *Id.* at ¶ 25.

{¶36} Here, Appellant appears to claim prejudice by arguing that his discovery period was limited to thirty-six days. As Appellee used twenty-eight of those days to respond to his initial demand, he argues this left him with little time for additional research or discovery. Appellant also complains he was initially given until September 4, 2024 (seven days) to respond to Appellee's motion for summary judgment, however, the court granted Appellee's motion for an extension of time to September 30, 2024. Appellant alleges he asked the court for additional discovery time but the court indicated that it had to dispose of the case within a two-year deadline and would not grant additional time. Appellant does not support this allegation with any transcript or affidavit.

{¶37} Regardless, the rationale of *Byers* applies, here. Neither *Byers* nor the instant case were decided based on the age of the case. The parties did not exceed any time limit set by the court. Instead, the court ruled on an issue of law after reviewing a dispositive motion. We also recognize that no matter what information Appellant could have learned during discovery, it would not have changed the outcome in this case, because Appellant could never satisfy the elements of the statute. He admits he was

Case No. 25 JE 0002

able to fully enjoy the services of the store, and cannot, then, satisfy the elements of his claim. Thus, Appellant is unable to establish prejudice in the court's failure to set forth a more timely scheduling order. Accordingly, Appellant's fourth assignment of error lacks merit and is overruled.

## Conclusion

**{¶38}** Appellant challenges the court's decision to grant summary judgment in favor of Appellee. Appellant argues that the court erred in filing a timely scheduling order, causing it to rush through disposition of the case. He contends the court also erred in finding he lacked standing to bring his claims, and finding that he failed to establish damages. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Robb, P.J. concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**